NOT DESIGNATED FOR PUBLICATION

No. 119,613

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of L.D.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Ellis District Court; BLAKE BITTEL, judge. Opinion filed January 18, 2019. Affirmed in part, reversed in part, and remanded with directions.

*Carol M. Park*, of Schwartz & Park, L.L.P., of Hays, for appellant natural mother.

*Ross Wichman*, of Anderson & Wichman, of Hays, for appellee paternal grandmother.

Before GARDNER, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: The Ellis County District Court found M.D. unfit to parent her son L.D. and appointed L.D.'s paternal grandmother and her husband as permanent custodians. As M.D. has argued on appeal, the evidence failed to support the district court's finding that M.D. would remain unfit for the foreseeable future—a necessary condition for the termination of parental rights or the involuntary appointment of a permanent custodian. We, therefore, reverse the district court's determination on foreseeability, set aside the permanent custodianship, and remand with directions for further proceedings aimed at reintegrating M.D. with her son.

L.D. was born in late February 2016. He has two older half-siblings who live out of state with their father; they are not parties in this appeal. The State filed a petition to have L.D. adjudicated in need of care in December 2016. At the time, M.D. faced drug charges in district court. In this case, the State deferred a hearing to adjudicate L.D. as

1

being in need of care in favor of an order of informal supervision. See K.S.A. 2017 Supp. 38-2244. M.D. continued to have physical custody of L.D. and to take care of him on a daily basis under regular monitoring by assigned caseworkers. As a result of the criminal proceedings, M.D. spent 90 days in jail. During that period and at other times, L.D.'s paternal grandmother and her husband cared for him. As a grandparent, A.G. has legal standing in this case as an interested party. See K.S.A. 2017 Supp. 38-2241(c) (grandparent deemed interested party with right to participate in proceedings); K.S.A. 2017 Supp. 38-2266 (interested party can move to have parents found unfit and their rights terminated or permanent custodian appointed for child).

A.G. filed a motion to have the district court adjudicate L.D. a child in need of care, to declare M.D. an unfit parent, and to terminate M.D.'s parental rights or alternatively to appoint her and her husband as permanent custodians. M.D. opposed those requests. The district court held an evidentiary hearing on A.G.'s motion in late April 2018 and rendered a lengthy bench ruling several days later adjudicating L.D. to be in need of care and finding M.D. to be unfit. Rather than terminate L.D.'s parental rights, the district court named A.G. and her husband as the permanent custodians of L.D. During the proceedings, L.D.'s father consented to his own mother and her husband serving as permanent custodians. M.D. has timely appealed the district court's decision.

The evidence showed that M.D. had serious knee problems necessitating multiple surgeries that weren't entirely successful. M.D. became addicted to prescription pain medications. She began chronically abusing both legal and illegal drugs. M.D. engaged in other antisocial behaviors associated with substance abuse, including trafficking in drugs to support her own addiction and committing theft and forgery to obtain money to buy drugs. Apart from criminal prosecutions, the State previously filed child in need of care proceedings involving M.D.'s two older children. The children were ultimately returned to M.D., and the matter was closed.

M.D. continued to use and abuse drugs during this case and to experience the legal repercussions of that behavior. M.D., nonetheless, retained custody of L.D. through the informal supervision order. M.D.'s primary caseworker testified that M.D. and L.D. had bonded as mother and child, M.D. adequately cared for L.D., and made reasonable arrangements for L.D. when she could not care for him because of the pending criminal actions. Those arrangements principally entailed having L.D. stay with A.G. and her husband. The caseworker acknowledged that L.D. enjoyed a good relationship with A.G. and was well cared for in her home.

On her own initiative, M.D. entered and completed an inpatient substance abuse treatment program in March 2018. Although M.D. tested positive for a low level of an illegal drug the day after she completed the program, she was otherwise drug-free thereafter. At the hearing, M.D. testified that the program had caused her to completely change her outlook and to appreciate the long-term physical and mental benefits of avoiding drug dependence. M.D. testified she was participating in counseling and other outpatient programs to avoid relapsing.

At the end of the hearing, the State suggested that, given the evidence, the district court should refrain from adjudicating L.D. as being in need of care. The district court could then continue the informal supervision of L.D. in M.D.'s custody. The guardian ad litem for L.D. argued the evidence did not support a finding that M.D. was legally unfit. So A.G., as an interested party, rather than the State pressed the case for unfitness. M.D. and A.G. are the only participants from the district court proceeding filing appellate briefs.

Before turning to the specifics of the district court's decision, we outline pertinent legal principles governing cases brought under the Revised Kansas Code for Care of Children, K.S.A. 2017 Supp. 38-2201 et seq. The policy behind child in need of care proceedings rests on the State's *parens patriae* interest in protecting the safety and welfare of children within its jurisdiction. See K.S.A. 2017 Supp. 38-2201(a)

3

(proceedings under Revised Kansas Code for Care of Children "deemed to be pursuant to the parental power of the state"); K.S.A. 2017 Supp. 38-2201(b)(1) ("safety and welfare of a child to be paramount in all proceedings under the code"); *In re L.B.*, 42 Kan. App. 2d 837, 842, 217 P.3d 1004 (2009) (recognizing *parens patriae* foundation for proceedings), *rev. denied* 289 Kan. 1278 (2010). But the Legislature has granted any individual, including grandparents, legal authority to proceed unilaterally and without the State's initial or continuing endorsement. See K.S.A. 2017 Supp. 38-2233(b) (private party may file petition to have child declared in need of care and may retain lawyer to pursue case); K.S.A. 2017 Supp. 38-2266.

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been deemed fundamental. Accordingly, a district court, acting at the behest of the State or any party, may extinguish the legal bonds between parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2017 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2017 Supp. 38-2269(a), the State or other party must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." Both present unfitness and the unlikelihood of change are necessary components of the legal determination. And the district court must find both to appoint a permanent custodian. K.S.A. 2017 Supp. 38-2269(a). The statute contains a nonexclusive list of nine conditions that singularly or in combination amount to unfitness. K.S.A. 2017 Supp. 38-2269(b). The statute also lists four other factors to be considered if a parent no longer has physical custody of a child. K.S.A. 2017 Supp. 38-2269(c).

4

In reviewing a district court's determination of unfitness and unlikelihood of change, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the prevailing party, that a rational fact-finder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in evidence must be resolved to A.G.'s benefit and against M.D.

Upon a finding of unfitness and unlikelihood of change, the district court may terminate the parent's rights or appoint a permanent custodian for the child. The district court must find termination to be in the child's best interests. See K.S.A. 2017 Supp. 38-2269(g)(1). If the district court appoints a permanent custodian without terminating parental rights, it makes no best-interests determination. See K.S.A. 2017 Supp. 38-2269(g)(3).

A permanent custodian assumes the legal rights and obligations of a parent, including physical custody of the minor child and the authority to make decisions about the child's care and welfare. K.S.A. 2017 Supp. 38-2272(c). In short, the permanent custodian supplants the parent in the child's life. The district court may, but need not, impose some limitations on the authority the permanent custodian exercises. K.S.A. 2017 Supp. 38-2272(d). We do not understand the district court to have restricted A.G. in any way. A permanent custodian may allow a natural parent to have contact with the child but is not required to do so absent a court order. Not surprisingly, the record on appeal includes no information about what visitation A.G. may have afforded her own son or M.D. And that would be irrelevant to the issues before us.

As the name implies, the appointment of a permanent custodian is permanent— until the child reaches the age of majority. The code contains no provision allowing a natural parent to regain custody from a permanent custodian. Because permanent

5

custodianship intrudes nearly as deeply and consequentially into a parent's rights as termination, the same constitutionally mandated due process protections apply.

Citing M.D.'s history of drug abuse and her related criminal problems, the district court found M.D. to be unfit based on three grounds and possibly a fourth in K.S.A. 2017 Supp. 38-2269(b). The district court specifically relied on:

• M.D.'s "use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render [her] unable to care for the ongoing physical, mental or emotional needs of the child," as provided in K.S.A. 2017 Supp. 38-2269(b)(3).

• The "failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family," as provided in K.S.A. 2017 Supp. 38-2269(b)(7).

• M.D.'s "lack of effort . . . to adjust [her] circumstances, conduct or conditions to meet the needs of the child," as provided in K.S.A. 2017 Supp. 38-2269(b)(8).

A single statutory factor adequately supported in the evidence can be legally sufficient for a district court to find a parent unfit. K.S.A. 2017 Supp. 38-2269(f).

The district court's finding under K.S.A. 2017 Supp. 38-2269(b)(3) is supported by clear and convincing evidence. M.D. had a deep-seated substance abuse problem that she failed to address for years, let alone successfully conquer. In turn, her largely unchecked abuse of prescription and illegal drugs repeatedly thrust her into the criminal justice process as a defendant. Those circumstances, especially in combination, left her unable to meet the physical needs of L.D. at the very least during the time she was incarcerated. Only because family members, principally A.G. and her husband, stepped in to help did L.D. weather those storms. This court has recognized that a parent's continuing use of illegal drugs can be a condition of unfitness precisely because that behavior often creates allied problems such as sporadic employment or unstable housing and the ever present

6

danger of criminal sanctions rendering the parent unable to care for a child. See *In re D.H.*, 54 Kan. App. 2d 486, 495-96, 401 P.3d 163 (2017); *In re D.T.*, No. 115,670, 2017 WL 1034544, at \*3 (Kan. App. 2017) (unpublished opinion); *In re K.D.B.*, No. 116,278, 2017 WL 3001033, at \*4-5 (Kan. App. 2017) (unpublished opinion).

The sufficiency of the evidence of the other grounds is less clear. Although M.D. remained under informal supervision, she retained custody of L.D. and apparently did at least an adequate job in directly parenting him. It is difficult to say with any certitude that agency efforts to "rehabilitate" the family had failed. But a fair argument can be made that M.D. displayed a lack of effort to adjust her circumstances to meet L.D.'s needs. Plainly, drug addiction has been the root of M.D.'s problems generally and, more particularly, the concerns about her ability to parent L.D.

M.D.'s decision to get inpatient treatment was praiseworthy. But its place in the chronology of this case remains troublesome in at least two respects. First, of course, M.D. waited until the figurate eve of the hearing on A.G.'s motion to oust her to go into treatment—a choice she could have made months (and arguably years) earlier. Second, the successful completion of an inpatient program is not the same as successfully beating an addiction to drugs or alcohol. The real test, in the context of these cases, lies in the parent's ability to avoid relapsing after treatment. We don't presume to suggest some bright-line time period to be legally satisfactory. We suppose identifying a reasonable duration of sobriety indicative of long-term success depends heavily on individual circumstances and may well entail expertise we lack. The district court could reasonably conclude M.D. had failed to sufficiently change her circumstances to accommodate L.D.'s needs absent a more prolonged demonstration that she had truly beaten her addiction.[*]

[*]In its bench ruling, the district court mentioned the ground of unfitness in K.S.A. 2017 Supp. 38-2269(b)(1): The parent's "[e]motional illness, mental illness, mental deficiency or physical disability . . . of such duration or nature as to render the parent unable to care for the ongoing physical, mental and emotional needs of the child."

7

But the district court neither explicitly found that ground to be applicable nor explained how it applied. We do not endeavor to make those connections for the district court. The evidence did not show that M.D. suffered from some illness or disability apart from her addiction or that L.D.'s needs were unmet for some other reason. Given the evidence, the district court's reliance (if any) on K.S.A. 2017 Supp. 38-2269(b)(1) would have been legally and factually redundant of its clear invocation of K.S.A. 2017 Supp. 38-2269(b)(3) as a basis for M.D.'s unfitness.

As we have explained, a district court's finding of present unfitness is one of two legal components necessary to terminate parental rights or to impose a permanent custodianship over a parent's objection. See K.S.A. 2017 Supp. 38-2269(a); K.S.A. 2017 Supp. 38-2272(a) (bases for appointing permanent custodian). The evidence also must clearly and convincingly demonstrate the condition of unfitness is unlikely to change in the foreseeable future. K.S.A. 2017 Supp. 38-2269(a). Here, however, the evidence failed to establish unlikelihood of change to a high probability.

As we have indicated, M.D. took a substantial step toward meaningful change when she completed the inpatient treatment program. At the motion hearing, the question remained whether M.D. would be able to maintain her recovery and avoid a relapse. The evidence did not show M.D.'s failure was inevitable or even probable. M.D. had not been through that sort of intensive treatment before, so she had no history demonstratively predictive of failure. Moreover, M.D. described and had begun a plan for continuing counseling and supportive group meetings to avoid relapsing.

In its bench ruling, the district court offered scant reasoning for its conclusion that M.D.'s drug abuse would recur in the foreseeable future. The district court conceded the difficulty in "determin[ing] . . . what the foreseeable future might look like." And the district court simply concluded that reviewing what had happened in the past provided a sufficient indicator of M.D.'s future. But a purely backward looking analysis disserves the whole point of rehabilitative efforts to reintegrate families—one of the keystones in the process. See K.S.A. 2017 Supp. 38-2201(b)(2), (b)(8). By the district court's categorical rationale, once a drug abuser, always a drug abuser. In turn, an addict entering treatment

8

and achieving sobriety during a child in need of care proceeding would be legally unable to overcome a history of substance abuse. The rule must be otherwise and at the very least acknowledge the possibility of recovery.

The circumstances here underscore the insufficiency of the evidence. M.D. continued to have custody of L.D., during the case, and, to all accounts, he was doing well in her care. They maintained a healthy, nurturing relationship as mother and child. This was not a situation in which a child had been removed from a parent and remained separated for an extended period because of the real risk of emotional or physical harm, thereby preventing or unraveling any positive bonding.

In assessing the possible duration of unfitness, the courts are to measure foreseeability by taking account of how children experience the passage of time. K.S.A. 2017 Supp. 38-2201(b)(4). Statutory "child time" differs from adult time because for young children a month or a year reflects a greater portion of their lives than the same period would for older teens or adults, and that difference in perception typically favors a prompt case disposition achieving permanency. *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re A.L.E.A.*, No. 116,276, 2017 WL 2617142, at *4 (Kan. App.) (unpublished opinion), *rev. denied* 307 Kan. 986 (2017). Child time becomes particularly significant when the child has been removed from the parent's physical custody, so the family unit has been fragmented, reintegration remains uncertain, and the child lacks a permanent home as a ward of the State. When the family remains intact during the judicial proceedings, child time typically would factor less prominently in measuring the "foreseeable future" and the concomitant goal of permanency.

In sum, the evidence here unmistakably weighed against a finding that M.D.'s drug abuse would not change in the foreseeable future. The district court erred in reaching that conclusion, especially in light of the requisite evidentiary standard. That, in turn, renders the district court's appointment of a permanent custodian erroneous.

9

In light of the record evidence, we affirm the district court's finding that M.D. was unfit at the time of the hearing. We reverse both the district court's finding that M.D.'s unfitness was unlikely to change in the foreseeable future and the order appointing A.G. and her husband permanent custodians of L.D. L.D. remains adjudicated a child in need of care. We, therefore, remand for further proceedings.

On remand, the district court shall hold a dispositional hearing, as provided in K.S.A. 2017 Supp. 38-2253, and enter a custody order within 30 days.

In the meantime, L.D. shall remain in the temporary custody of A.G. M.D. shall be permitted reasonable visitation unless the State or L.D.'s guardian ad litem files a written objection to visitation. If M.D. and A.G. cannot agree upon visitation pending the dispositional hearing, the district court shall enter an appropriate order. See K.S.A. 2017 Supp. 38-2274(b).

A permanency plan shall be promptly prepared as provided in K.S.A. 2017 Supp. 38-2263 with the presumptive goal of family reintegration.

Given the passage of time attributable to the appeal process, any party or interested party may move the district court for reconsideration of the adjudication of L.D. as a child in need of care or the order finding M.D. to be unfit. If such a motion is filed, the district court shall expeditiously schedule a hearing and issue a ruling on reconsideration.

Affirmed in part, reversed in part, and remanded with directions.