(217 P.3d 1004)
No. 102,202

IN THE INTEREST OF L.B., MINOR CHILD UNDER THE AGE
OF EIGHTEEN.

Opinion filed October 16, 2009.

*Bruce C. Hedrick*, of Overland Park, for appellant natural mother.

*Steven J. Obermeier*, assistant district attorney, and *Stephen M. Howe*, district attorney, for appellee.

Before RULON, C.J., GREENE AND HILL, JJ.

RULON, C.J.: K.B., mother of L.B., appeals the decisions of the district court finding (1) probable cause at a temporary custody hearing to remove L.B. from mother's home; (2) L.B. was a child in need of care; and (3) mother was an unfit parent to L.B. and said condition was unlikely to change in the foreseeable future resulting in the termination of mother's parental rights. We dismiss in part and affirm in part.

## JURISDICTION

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 185, 106 P.3d 483 (2005). "The right to appeal is entirely statutory and is not contained in the United States or Kansas Constitutions. Subject to certain exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statute. [Citation omitted.]" *Butler County R.W.D. No. 8 v. Yates*, 275 Kan. 291, 299, 64 P.3d 357 (2003).

K.S.A. 2008 Supp. 38-2273(a) provides: "An appeal may be taken by any party or interested party from any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights." The procedure on appeal shall be governed by article 21 of chapter 60 of the Kansas Statutes. K.S.A. 2008 Supp. 38-2273(c). A notice of appeal is required to be filed within 30 days of the order. K.S.A. 60-2103(a). Where such orders are not timely appealed, this court has no jurisdiction to review any such order as a part of a timely appeal from a subsequent order involving the same child, such as an order terminating parental rights. See *In re D.I.G.*, 34 Kan. App. 2d 34, 114 P.3d 173 (2005).

On July 10, 2007, Kansas State Department of Social and Rehabilitation Services (SRS) took L.B. into custody based on allegations L.B. was a child in need of care. The State was concerned mother had left L.B. in daycare for extended periods of time. At the temporary custody hearing, the court found allegations existed constituting an emergency and placed L.B. in SRS custody.

On January 9, 2008, the district court found L.B. was a child in need of care and ordered the creation of a reintegration plan. Eventually the State filed a petition to terminate mother's parental rights. After an evidentiary hearing, the court found there was clear and convincing evidence mother was an unfit parent and this condition was unlikely to change in the foreseeable future and in L.B.'s best interests terminated mother's parental rights. The journal entry of termination was filed December 22, 2008.

Mother filed her notice of appeal on January 20, 2009, which stated mother was appealing "from all judgments, rulings, decisions, and findings made by [the district court] on December 4, 2008, and the CINC finding with the Journal Entry filed January 28, 2008, to the Court of Appeals of the State of Kansas."

On March 4, 2009, on a motion filed by mother, the district court conducted a hearing wherein mother testified mother's previous attorney had not told mother she had a right to appeal either the prior temporary custody order or the CINC determination. The State did not contest mother's testimony. The district court found mother was not informed of her right to appeal either the temporary custody order or the CINC determination, but the order of termination of mother's parental rights was *not* modified. Mother's motion to docket the appeal out of time was granted by this court.

This record clearly shows mother's notice of appeal was untimely as to the district court's orders of temporary custody and CINC findings. Consequently, this court has no jurisdiction to review those rulings. The next question is whether this court should apply the holding in *State v. Ortiz*, 230 Kan. 733, 736, 640 P.2d 1255 (1982), in the context of a civil child in need of care/termination of parental rights proceeding.

Mother argues the standard set forth in *State v. Ortiz*, which allows criminal defendants to file a notice of appeal out of time,

should be extended to both the temporary custody hearing and the CINC hearing. In support of this contention mother cites *In re T.M.C.*, 26 Kan. App. 2d 297, 301, 988 P.2d 241 (1999), where a panel of this court extended the *Ortiz* fundamental fairness exception to termination of parental rights cases. For reasons cited elsewhere in this opinion, we choose to not follow the holding in *In re T.M.C.*

K.S.A. 2008 Supp. 38-2205(b) requires in all proceedings under the Revised Kansas Code for Care of Children any parent of a child alleged or adjudicated to be a child in need of care must be appointed counsel if he or she is financially unable to retain private counsel. This guarantees an indigent parent the right to counsel in a temporary custody hearing and a child in need of care proceeding.

Mother argues her rights to companionship, care, custody, and management of her child are so fundamental they require the State to apply all standards of substantive due process to proceedings which would cut off those rights, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982). We agree with this argument, but this does not end our analysis of the issue.

A compelling United States Supreme Court case, decided 1 year prior to *Santosky*, is *Lassiter v. Department of Social Services*, 452 U.S. 18, 68 L. Ed. 2d 640, 101 S. Ct. 2153 (1981). The *Lassiter* Court was asked to conclude an indigent parent had an absolute right to appointed counsel under the Due Process Clause of the Fourteenth Amendment in a termination of parental rights case. The *Lassiter* Court declined the invitation and held an indigent parent's rights were entitled to due process protections under the 14th Amendment, but such rights were subject to the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). 452 U.S. at 26-27.

In the *Lassiter* case the Court concluded:

"In sum, the Court's precedents speak with one voice about what 'fundamental fairness' has meant when the Court has considered the right to appointed counsel, and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical

liberty. It is against this presumption that all the other elements in the due process decision must be measured.

"The case of *Mathews v. Eldridge*, [citation omitted] propounds three elements to be evaluated in deciding what due process requires, viz., the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions. We must balance these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." 452 U.S. at 26-27.

*Lassiter* is compelling because if in a termination of parental rights case an indigent parent's right to appointed counsel is subject to the balancing test under *Mathews v. Eldridge,* then arguably the right of an indigent parent to file an untimely notice of appeal based on a claim of ineffective assistance of counsel in a similar case should be judged under the same balancing test.

Our Supreme Court has recognized the distinction between the constitutional rights of parents in a CINC case versus the rights of a defendant in a criminal case. In *In re J.D.C.*, 284 Kan. 155, 159 P.3d 974 (2006), our Supreme Court distinguished the right of confrontation in a criminal trial under the Sixth Amendment versus a parent's right of confrontation in a CINC case and held any civil litigant's claim to confrontation and cross-examination is grounded in the Due Process Clause of the Fifth and Fourteenth Amendments. 284 Kan. at 166. Further:

"A parent's right to make decisions regarding the care, custody, and control of his or her child is a fundamental liberty interest protected by the Fourteenth Amendment. *Troxel v. Granville,* 530 U.S. 57, 65-66, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000); *Sheppard v. Sheppard,* 230 Kan. 146, 152, 630 P.2d 1121 (1981), *cert. denied* 455 U.S. 919 (1982). That right, however, is not absolute. The welfare of children is a matter of State concern. *Sheppard,* 230 Kan. 146, Syl. ¶ 2. Before a parent can be deprived of her right to the custody, care, and control of her child, he or she is entitled to due process of law. 230 Kan. at 152-54.

"A due process violation exists only when a claimant is able to establish that he or she was denied a specific procedural protection to which he or she was entitled. The type and quantity of procedural protection that must accompany a deprivation of a particular property right or liberty interest is determined by a balancing test, weighing: (1) the individual interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the State's interest in the procedures used, including the fiscal and administrative burdens that any addi-

tional or substitute procedures would entail. *Mathews*, 424 U.S. at 335; *Winston*, 274 Kan. at 409-10." 284 Kan. at 166-67.

Given the above-cited authority, here any right this mother possessed in filing an untimely appeal based upon the alleged ineffective assistance of mother's appointed counsel must be judged under the balancing tests as stated in *Mathews v. Eldridge*, 424 U.S. 319, and *In re J.D.C.*, 284 Kan. 155. We conclude *Ortiz* is inapplicable in this appeal.

## The Balancing Test

Termination of parental rights is a triangle which balances the State's interest as *parens patriae* along with the parents' rights to preserve the family relationship and the child's best interests. *In re S.M.Q.*, 247 Kan. 231, 232, 796 P.2d 543 (1990), *reversed on other grounds In re B.D.-Y.*, 286 Kan. 686, 187 P.3d 594 (2008). The Revised Code for the Care of Children, K.S.A. 2008 Supp. 38-2201 *et seq.*, requires all proceedings be disposed of without unnecessary delay and Code provisions be "liberally construed" to best serve the child's welfare. This court has held courts must strive to decide these cases in "child time" rather than "adult time." See, *e.g.*, *In re D.T.*, 30 Kan. App. 2d 1172, 1175, 56 P.3d 840 (2002). As our Supreme Court has noted, " 'Children should not be left languishing in SRS custody.' " *In re J.A.H.*, 285 Kan. 375, 172 P.3d 1 (2007).

Here, we must balance mother's interest in pursuing an untimely appeal of the temporary placement order and the finding L.B. was a child in need of care, with the State's and L.B.'s interest in concluding the proceeding without unnecessary delay in "child time."

Obviously, mother, L.B., and the State have significant interests at stake; mother in her fundamental right to be with and to raise her child and L.B. in her right to a relationship with her parent and her right to a conclusion of this proceeding without delay, whatever the outcome. The scales of justice most often will tip in favor of a parent's fundamental rights to his or her child.

Next, we must consider the risk of erroneous deprivation of the parental interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. An

order of temporary placement is, by definition, temporary. Here, the facts and circumstances giving rise to such order were long passed and were the subject of numerous subsequent proceedings. Any additional procedural safeguard, like an untimely appeal, would have little value. The interests of the State and L.B., at this late stage of the case, clearly outweigh any interests mother would have in challenging the temporary custody order.

The balancing test as it relates to the CINC ruling is much the same as with the temporary placement order. The findings necessary for a court to find a child in need of care are set out in K.S.A. 2008 Supp. 38-2202(d). Those findings are temporal, based on the facts then existing. Under the balancing tests enunciated in *Mathews v. Eldridge*, 424 U.S. 319, and *In re J.D.C.*, 284 Kan. 155, the parent's right to an untimely appeal from the factual findings in a CINC proceeding is far outweighed by the minor child's right to have litigation decided in a timely manner, *i.e.*, in "child time." Allowing an appeal of the CINC finding at this late date would be of little value and only serve to delay the resolution of the case. Here, the scales of justice clearly tip in favor of the State and L.B.'s interests.

Finally, we must consider the State's interest in the procedures used, including the fiscal and administrative burdens any additional or substitute procedures would entail. The Kansas statutes in place calling for the expedited resolution of these types of cases serve two functions. The first function is to protect the ongoing physical, mental, and emotional needs of the child by advancing the proceedings without unnecessary delay. K.S.A. 2008 Supp. 38-2201(b). However, the Kansas statutes, by expediting the underlying proceedings, recognize the cost to the State in these types of case is considerable. In 1990, our Supreme Court noted "in Kansas alone during 1989 there were 2,067 confirmed child abuse reports, 129 confirmed hospitalizations due to child abuse, and 8 confirmed child abuse deaths." *In re S.M.Q.*, 247 Kan. at 232. The State expends considerable funds and other resources every day a child is in State custody.

Given the procedural posture of this case, and applying the *Mathews v. Eldridge* and *In re J.D.C.*, balancing tests, we conclude

mother is not entitled to take an untimely appeal of the prior orders of temporary custody and the finding L.B. was a child in need of care. Therefore, we lack jurisdiction to reach those issues.

## TERMINATION OF MOTHER'S PARENTAL RIGHTS

The standard of review of a termination of parental rights case requires the district court's findings be supported by clear and convincing evidence, which entails reviewing the evidence in a light most favorable to the State, to determine whether a rational fact-finder could have found it highly probable that termination was warranted and in the child's best interests. The appellate court does not reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705-06.

Here, the district court in terminating mother's parental rights specifically referred to K.S.A. 2008 Supp. 38-2269(b)(4), (7), (8), as well as K.S.A. 2008 Supp. 38-2269(c)(2), (3), and (4). Weighing all evidence in a light most favorable to the State, a rational fact-finder could have found termination was warranted.

The State called Mary Bowersox, a therapeutic case manager, as the State's only witness. Bowersox had been assigned L.B.'s case. Following the CINC determination, the court had ordered a multi-month reintegration plan. Bowersox testified that halfway through the reintegration plan, mother's progress began to decline, and there was a deterioration of mother's ability to accomplish the terms of the reintegration steps.

Bowersox testified that in April 2008, mother had completed a level 3 psychological evaluation and therapy was ordered for mother. Mother had a job and was submitting pay stubs. Due to the progression, mother was moved from supervised visits to unsupervised visits at mother's home. However, in mid-April mother's cooperation began to deteriorate. During an unscheduled CASA visit, mother became upset and angry, yelling at the CASA worker, stating mother deserved a week's notice as to when CASA would make a visit. Eventually, mother stopped submitting pay stubs as proof of employment. When CASA called the employer, CASA discovered mother had been fired for failing to show up for

work. Finally, after mother's unsupervised visit for L.B.'s birthday in April, L.B. told CASA workers L.B. played with her father. CASA was concerned about contact with the natural father without their knowledge and moved mother back to supervised visits.

This record shows Mother did not pay her rent, received an eviction notice from her landlord, and the utilities were shut off at her home. Later mother stopped coming to her therapy sessions and showed up 40 minutes late for her scheduled visitation period, then missed her scheduled visitation without calling. Mother's visitation was temporarily suspended as a result of mother missing her weekly session, so SRS and mother met to go over the visitation plan. Following that meeting, the visitation meetings went well for awhile.

In July 2008 there were several incidents which caused CASA concern. First, during a July case plan meeting, mother showed up 45 minutes late. Likewise, in early July mother did not bring appropriate supplies to a visitation with L.B. Finally, mother missed another visit with L.B. in July, causing mother's visitation to be temporarily suspended again. During this time, CASA discovered mother's car had been impounded and mother's utilities were not paid. Finally, CASA discovered mother had not gone to her required therapy since mid-June.

Bowersox testified she made several attempts to schedule a meeting to restart visitation, but mother called and cancelled the meeting, called and cancelled the rescheduled meeting, and finally failed to show up to the meeting or call and cancel after the meeting had been rescheduled a third time. Mother did attend a pretrial conference on September 15. During this conference, mother took a UA which tested positive for methamphetamine. Later, SRS sent a letter to mother at the address mother provided, but the letter was returned because mother was "not at this residence." Since the pretrial conference there had been only one contact from mother. None of the SRS workers had heard from mother since November 10, 2008. Finally, Bowersox testified in her opinion, mother was unfit in her role as a parent and this unfitness was unlikely to change in the foreseeable future. Importantly, mother did not appear for the termination hearing.

Mother's central argument on appeal is there was no clear and convincing evidence she was unfit because she had substantially complied with the reintegration plan until a medical disability made her compliance impossible. Mother further argues she failed to comply with the reintegration plan because she was either hospitalized or without transportation. The evidence in this record does not support mother's argument. By the time of the termination hearing there had been no progress towards completion of the reintegration plan for many months, and there had been a steady decline in mother's involvement with SRS. Mother presented no evidence she kept SRS informed of her changing circumstances. Mother failed to appear at the termination hearing and failed to present evidence, or have evidence presented on her behalf, to explain the lack of involvement through most of the reintegration period. Mother referred to her hospitalization several times, without citing evidence in this record.

Based on the evidence presented in the record, at the time of the termination hearing the district court could have reasonably found mother was unfit based on the standards outlined in K.S.A. 2008 Supp. 38-2269. Under the *B.D.-Y.*'s standard of review, when the evidence is weighed in a light most favorable to the State, a reasonable factfinder could determine it was highly probable, by clear and convincing evidence, that mother's parental rights should be terminated and such termination was in L.B.'s best interests. Therefore, the district court did not err in terminating mother's parental rights.

Affirmed in part and dismissed in part for lack of jurisdiction.