NOT DESIGNATED FOR PUBLICATION

No. 120,124

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of L.C.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Douglas District Court; BETHANY J. ROBERTS, judge pro tem. Opinion filed May 3, 2019. Affirmed.

*Rachel I. Hockenbarger*, of Topeka, for appellant.

*Lindsie Ford*, legal intern, *Kate Duncan Butler*, assistant district attorney, and *Charles Branson*, district attorney, for appellee.

Before HILL, P.J., BRUNS, J., and BURGESS, S.J.

PER CURIAM:  The Douglas County District Court found L.C. to be a child in need of care (CINC). Mother appeals, claiming that there was insufficient evidence for the district court to find her minor son, L.C., to be a CINC. We reject Mother's claim that L.C. was not a CINC and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On June 10, 2018, Mother sent texts to her boyfriend threatening to kill herself and L.C. Fearing she might act on her statements, Mother's boyfriend contacted law enforcement. As a result, Mother was taken to Lawrence Memorial Hospital for evaluation and was then involuntarily committed to Osawatomie State Hospital. L.C.'s father had not been involved in his care since he was a month old and did not respond to

1

attempted contact at four different numbers. L.C. was placed in protective custody of the State because no parent was available to care for him.

Mother had a care and treatment hearing on the morning of June 13, 2018. The district court found probable cause that Mother should remain involuntarily committed at Osawatomie State Hospital.

On June 13, 2018, the State initiated CINC proceedings for L.C. The same day a hearing was held on temporary custody. Mother appeared by video from Osawatomie State Hospital. L.C. was ordered to remain in the State's custody and placed in out-of-home placement.

The adjudication hearing was held in August 2018. The district court allowed evidence offered by the State regarding Mother's previous contact with the Kansas Department for Children and Families (DCF) in March 2018 after Mother posted a video online in which she threatened to kill L.C. Turner Smith, a licensed social worker with DCF, became involved with Mother at that time after he received a report for emotional abuse. In the video, Mother is sitting in front of L.C., and L.C. is playing with Mother's hair and giggling. Mother states: "I'm gonna fucking kill you." The video cuts out with Mother grabbing at L.C.

Smith talked to Mother about the content of the video. Mother told Smith she did not believe it was inappropriate for her to talk about murdering L.C., and she frequently made statements about sacrificing him to the gods. Smith found it troubling that Mother made statements about murdering L.C., but DCF did not substantiate Mother for emotional abuse primarily due to L.C.'s age. Smith explained that substantiating emotional abuse "requires some sort of deterioration of the child, which would be extremely hard to find at that age."

Smith testified that his next interaction with Mother occurred when he received the report that L.C. had been taken into police protective custody in June 2018. Smith met with Mother's boyfriend, who provided him with some of the text messages. The texts stated:

- "Me and [L.C.] be dead when you get home"
- "I'm just kill us both"
- "every one will be happy I'll be dead and so will [L.C.]"
- "We won't cost anyone [too] much if we are dead"
- "So I'm do everyone and myself and [L.C.] a favor"
- "I'm kill ya both"
- "I'm kill us both . . . "
- "I'm kill him and myself"
- "I'm sure I can find enough chemicals in this house to do so"
- "I'm be dead so it won't matter"
- "Help isn't something I'll need dead"
- "And I won't cost you anything dead"
- "I'll be dead
- "So will my son"
- "I'm going to kill myself . . . . I won't be breathing when you get home"
- "I'm over being told how much I cost people and how I should just be dead anyways"
- "I'm going to end it and bet you when you get home my ass is dead"
- "Nope I have rope and it's already around my neck . . ."
- "[L.C.] is just running around"
- "I'll just kill myself like I was told to do"
- "No one wants me around anyways"
- "And I cost you too much"
- "And you could afford shit if I wasn't here"
- "So . . . I'm kill myself."
- "No one but me wants him anyway."

Smith found the text messages extremely concerning because Mother repeatedly threatened to kill herself and L.C. Smith testified that he was worried that Mother might hurt L.C. if she had access to him after being released from involuntary commitment. Smith also expressed concern about the fact that Mother continued to defend the statements and indicated that her phone auto filled L.C.'s name into the texts.

Mother testified that she did intend to send the text messages. As with the video, she claimed she sent the texts threatening L.C. because she wanted attention from her boyfriend. Mother denied having any intent to harm L.C. Mother testified she has been receiving treatment for mental health conditions for over 20 years, but she was no longer taking medication because it made her sick. Mother also claimed she was not taking medication at the time of the hearing because she had recently been "put on hormones" and had an appointment for a follow-up medicine evaluation.

At the end of the hearing, the district court adjudicated L.C. to be a CINC based on the threats to L.C., concerns about Mother's mental health, and Mother's related hospital stay. The district court found by clear and convincing evidence that at the time of the filing of the petition, L.C. was without adequate parental control and was without the care or control necessary for his physical, mental, or emotional health under K.S.A. 2018 Supp. 38-2202(d)(1) and (d)(2). The district judge stated:

> "The video and the text messages together do give me pause, and I—when I first saw the video, I think I understand why DCF sort of gave you the benefit of the doubt. It does feel kind of like a joke and in the vein of the I'm going to getcha stuff, and so I understand that. I think the combination of the video with the text messages is what gives myself and the professionals pause. It's those two things together that make us nervous. In combination with there was a determination by another judge that at least in that short time that you needed mental health treatment immediately.
> "And so for those reasons I am going to find that [L.C.] is a child in need of care under [K.S.A. 2018 Supp.] 38-2202(d)(1) and (d)(2) . . . ."

4

The district court entered a journal entry reflecting its findings and a case plan goal of reintegration.

Mother's appeal now brings this matter before us.

*Sufficiency of the Evidence That L.C. Was a CINC*

Mother claims the district court erred in finding L.C. is a CINC because the district court focused on the evidence at the time the petition was filed and not at the time of the hearing. In addition, Mother asserts the State presented insufficient evidence that L.C. was a CINC and claims the evidence showed that L.C. was well cared for at home.

CINC actions stem from the State's interest in protecting the safety and welfare of children within its jurisdiction. See K.S.A. 2018 Supp. 38-2201(a) (proceedings under the Code "deemed to be pursuant to the parental power of the state"); K.S.A. 2018 Supp. 38-2201(b)(1) ("safety and welfare of a child to be paramount in all proceedings under the code"); *In re L.B.*, 42 Kan. App. 2d 837, 842, 217 P.3d 1004 (2009). A CINC adjudication is a begining step in the process and is often followed by attempts to reunify the child with the parent. K.S.A. 2018 Supp. 38-2251. However, a parent may appeal the adjudication of his or her child as being in need of care, as Mother has done here. K.S.A. 2018 Supp. 38-2273.

Mother claims the evidence was insufficient to support the decision that L.C. was a CINC. In considering this issue, we view the evidence in the light favoring the State to determine whether there was clear and convincing evidence from which a rational fact-finder could find L.C. a CINC. See *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

5

First, we will address Mother's claim that the district court erred by considering the evidence at the time the CINC petition was filed and not at the time of the hearing. For support, Mother points to language in *In re A.E.S.*, No. 108,584, 2013 WL 2992733, at *4 (Kan. App. 2013) (unpublished opinion), in which a panel of this court stated that the criteria in the CINC statute should be viewed at the time of the hearing, rather than at the time the petition is filed, for a determination that the child is now in need of care.

K.S.A. 2018 Supp. 38-2202(d) provides that a CINC is "a person less than 18 years of age at the time of filing of the petition or issuance of an ex parte protective custody order" who meets certain criteria. This court has previously rejected arguments that the language "'at the time of the filing of the petition'" limited "the temporal scope of the court's review at an adjudication hearing." See *In re B.G.*, No. 109,513, 2013 WL 4404574, at *5 (Kan. App. 2013) (unpublished opinion).

In this case, the district court looked at the evidence at the time of the filing of the petition for the CINC determination, and then it considered evidence after the petition was filed in determining the disposition. In this case, both time periods were relevant to the CINC determination and the disposition of such a petition. There is no evidence that the district court erroneously focused solely on the evidence at the time the petition was filed in making its CINC determination and the proper disposition.

The district court's journal entry and order of adjudication shows that the district court adjudicated L.C. to be a CINC under two subsections of the statute: (1) K.S.A. 2018 Supp. 38-2202(d)(1), which requires clear and convincing evidence that the child was "without adequate parental care, control or subsistence and the condition is not due solely to the lack of financial means of the child's parents or other custodian;" and (2) K.S.A. 2018 Supp. 38-2202(d)(2), which requires clear and convincing evidence that the child was "without the care or control necessary for the child's physical, mental, or emotional health."

The evidence shows that this child was one year old at the time the CINC petition was filed. L.C. was in need of constant care and completely depended on those around him for his physical needs. Mother was the child's primary caregiver, and she was involuntarily committed to Osawatomie State Hospital and unable to meet L.C.'s daily needs during her eight-day stay. Mother had threatened to kill L.C. prior to her admission to the hospital. Mother testified at the hearing that she was still in the process of securing appointments to evaluate her medical needs and secure the therapy that she needed to address her mental health needs.

In *In re A.M.*, No. 106,890, 2012 WL 2925660, at *6 (Kan. App. 2012) (unpublished opinion), a panel of this court reiterated that "a CINC case . . . is focused entirely on the care and well-being of the [child]." Here, Mother made threats indicating that she might harm herself and her child on at least two occasions in the months leading up to the CINC petition. Because of those threats, Mother was involuntarily committed to a hospital, and L.C. was left "without adequate parental care, control or subsistence" and "without the care or control necessary for the child's physical, mental, or emotional health." See K.S.A. 2018 Supp. 38-2202(d)(1) and (2). Despite her threats, the district court acknowledged that it seemed like L.C. was well cared for and rejected the State's recommendation of a dual case plan of reintegration and adoption. Instead, the district court ordered a case plan goal of reintegration with Mother.

A comparison of the facts of this case to the facts of other cases is often not helpful as CINC cases rely solely on the specific facts in front of the court. In this case, a child of tender age was left without a caretaker while his Mother was evaluated and treated for mental health concerns. In addition, Mother made threats to the child's life that were serious enough that others reported her behavior to DCF and to law enforcement. Mother admitted to Smith that she frequently made comments about "sacrificing" her son. Smith reported serious concerns that Mother would harm L.C. if she had access to

7

him. At the time of the hearing, Mother was still in the process of securing a therapist to address what led to those threats.

The fact of the matter is that the facts preceding the filing of a CINC petition, the facts existing at the time of the filing of the petition, and the facts existing at the time of the CINC determination are all relevant. Mother has had mental health issues for an extended period. Mother made threats against L.C. prior to the petition. She was hospitalized at the time of the filing of the petition for making threats against her son. At the time of the hearing, Mother had just been released from the state hospital and she had no mental health support. There was nothing at that time to show that Mother was stable or that the threatening behavior would not continue. While there was no evidence presented that Mother had acted on her threatening behavior at the time of the hearing, it is not required for a child to be harmed before addressing a child that is clearly at risk for harm. See *In re Price*, 7 Kan. App. 2d 477, 480-81, 644 P.2d 467 (1982). There was more than sufficient evidence to find L.C. was a CINC.

Based on the evidence presented in the record at the time of the termination hearing, the district court could have reasonably found L.C. to be a CINC based on the standards outlined in K.S.A. 2018 Supp. 38-2202(d)(1) and (2). Under the standard of review, a reasonable fact-finder could determine it was highly probable, by clear and convincing evidence, that L.C. was a CINC. Accordingly, we affirm the district court's adjudication of L.C. to be a CINC.

Affirmed.