NOT DESIGNATED FOR PUBLICATION

No. 121,180

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of K.V.,
A minor child.

MEMORANDUM OPINION

Appeal from Allen District Court; TOD MICHAEL DAVIS, magistrate judge. Opinion filed
November 15, 2019. Reversed and remanded with directions.

*Bret A. Heim*, of Immel & Heim, P.A., of Iola, for appellant natural mother.

*Jacqie Spradling*, assistant county attorney, for appellee.

*Charles H. Apt III*, of Apt Law Offices, LLC, of Iola, guardian ad litem.

Before POWELL, P.J., PIERRON and ATCHESON, JJ.

POWELL, J.:  H.V. (Mother) appeals the district court's termination of her parental rights to K.V. After an initial hearing, the district court found Mother unfit but not unfit for the foreseeable future. After setting over the matter for several months, another hearing was conducted at which Mother failed to attend. This time the district court also found Mother unfit for the foreseeable future on the basis of reports made available to the court and counsel but not introduced into evidence or present in the record on appeal. It then terminated Mother's parental rights. On appeal, Mother challenges the sufficiency of the evidence supporting the district court's unfitness findings. After a review of the record, we agree with Mother that there is no evidence in the record to support the district court's finding of unfitness in the foreseeable future. Thus, we reverse and remand.

1

FACTUAL AND PROCEDURAL BACKGROUND

K.V. was born prematurely at 26 weeks' gestation in 2015 in Overland Park, Kansas. He was born with methamphetamine, amphetamine, and marijuana in his system. Mother also tested positive for the same substances at the time of K.V.'s birth and later admitted to using methamphetamine while pregnant. As a result of his premature birth and drug exposure, K.V. had numerous health issues. In fact, it was expected that K.V. would be hospitalized for several months.

On August 17, 2015, shortly after K.V.'s birth, the State filed a petition alleging K.V. was a child in need of care because he tested positive for methamphetamine, amphetamine, and marijuana at birth. The next day, the district court held a temporary custody hearing, found K.V. would likely sustain harm if not removed from the custody of Mother, and granted temporary custody to the Department for Children and Families (DCF) for an out-of-home placement. K.V. remained hospitalized at the time. Nearly two months later, the district court adjudicated K.V. a child in need of care.

Throughout the course of the case Mother relocated to different cities across Kansas several times. K.V. has never resided with Mother. K.V. went straight from his extended hospitalization to his out-of-home placement in Allen County. Moreover, over the next three years Mother never had a single unsupervised visit with K.V. Mother was assigned several case plans that contained tasks that could be completed in a year or less.

On July 25, 2018, the State filed a motion to terminate the parental rights of Mother and K.V.'s father. K.V.'s father is not a party to this appeal. Four KVC workers testified as witnesses for the State at the termination hearing held September 18, 2018. Mother also testified.

While Mother would, at times, make great strides toward progress, other times she would not. As of the date of the termination hearing on September 18, 2018, Mother had mostly completed her plan tasks by: (1) completing a drug and alcohol assessment and following its recommendations; (2) signing all required releases; and (3) obtaining and maintaining adequate housing and completing the few minor childproofing tasks KVC required during its inspection of her home. Regarding her housing, Mother made adjustments as required by KVC. For example, she originally lived in a studio apartment, but KVC required K.V. have his own room so she moved to a two bedroom apartment. Mother accepted a roommate because of the increased expense of having a larger apartment, but when that roommate could not pass the KVC-required background check, Mother had the roommate move out. Mother also completed the mental health intake, her required parenting classes, and obtained and maintained reliable transportation, although she did not have a valid driver's license at the time of the hearing because it had expired. Mother maintained long-term employment and took on a second job. Mother also became CPR certified.

But Mother had difficulties with some areas of her case plan, particularly staying drug free. Mother had struggled with narcotics use since 2006, and her submission of requested UAs was sporadic at best. Despite being informed that no-shows for requested UAs would be counted against her, Mother had several UAs counted as positive for that reason. Also, roughly a month after the State sought to terminate her parental rights, Mother tested positive for methamphetamines. Because of that positive, she submitted a second sample on the same day that tested negative. Due to the discrepancy, the second sample was sent to the lab; the lab reported that the sample was diluted, which ultimately was counted as a positive UA. Ultimately, seven UAs had been requested from April to August 2018, with the four no-shows and the one positive test in August 2018 counting against her. Finally, at the beginning of the termination hearing, the district court ordered Mother to submit a UA. However, after the district court, witnesses, and the parties

3

waited for over an hour, Mother was still unable to produce a sample, so the district court judge began the proceedings.

Mother also struggled with fulfilling her visitation requirements. Like her UA compliance, her visitation with K.V. was sporadic, especially in the first two-and-a-half years of the case. Mother's visitation was sporadic for several reasons. In the beginning, Mother's noncompliance with UA requests led to suspended visitation, her employment obligations would at times interfere, she failed to routinely send KVC her work schedule so visits could be planned around her availability, and she struggled with finding transportation to K.V.'s placement in Allen County. Mother had to travel to K.V. initially because he was medically fragile and not cleared by his health care providers to travel to Mother. Ultimately, Mother did have visitation with K.V. twice at her home; however, Mother never had unsupervised visitation with K.V. and the longest period of visitation was three hours. K.V. was hesitant to be left alone with Mother and was very attached to his placement provider, but Mother testified she believed she and K.V. had started to bond. As with her other case plan tasks, Mother had made substantial progress in the five months leading up to the termination hearing and had made every visit since April 2018.

Mother admitted she had only made substantial progress on her reintegration case plan since April 2018 because KVC informed her that it was moving toward termination and the permanency goal had been changed to adoption. All of the State's witnesses agreed that Mother could not provide the care that K.V. needed. Several reasons were given for this conclusion, including her lack of progress in the case, her mental health, her lack of addiction treatment, her recent positive UA, her inability to care for herself, her housing situation, and her no-shows to visitations. Witnesses also testified that it was in K.V.'s best interests for Mother's rights to be terminated. K.V. had become comfortable and stable in his current placement, where he had been his whole life, despite his medical issues. Mother's most recent caseworker testified that K.V. and Mother did not have a parent-child bond.

The record on appeal indicates the district court shared its concern about Mother's stability but also recognized Mother had made great strides on her parenting plan in the few months before the hearing. It took the matter under advisement and continued the hearing for October 23, 2018. However, no transcript of the October hearing exists because the recording equipment apparently malfunctioned. But the district court's journal entry memorializing the hearing indicates:

> "The court finds that the State met its burden in showing that given the length of time out of the home there is a presumption of unfitness and that it is in the best interest of the child for severance.

> "The court does not find that Mom's situation is unlikely to change therefore the matter is set over to determine whether Mom has made progress."

The district court held another hearing on February 12, 2019. Mother did not personally appear, and her attorney requested a continuance. Mother's attorney mentioned this request was based on a phone conversation the day before in which Mother informed her attorney she would not make the hearing. At this short hearing the following discussion was held:

> "[MOTHER'S COUNSEL]: Your Honor, my only statement is I didn't get a call from my client until yesterday. I don't have any doubt the statements in the reports are correct. However, (inaudible) my client. She can't be. So I just ask the Court to take that into consideration in deciding whether or not to grant the continuance.

> "THE COURT: Okay. Under the circumstances here—and my recollection is mom was on a really short leash. I'd found there were sufficient grounds for termination.

> "I'm going to deny mom's request for a continuance and grant the [S]tate's—I'm going to go ahead and adopt the [S]tate's recommendations, as echoed by [the Guardian

5

ad Litem], and find mom's rights—parental rights for severance be in the best interests of the child and for adoption to go ahead and proceed."

There is nothing in the record on appeal to indicate to which "reports" Mother's counsel was referring. The journal entry memorializing this hearing states:

"Mom's attorney asks for a continuance today. State and [Guardian ad Litem] object. The court den[ies] mom's request to continue.

"The court severs mom's parental rights based on previous ruling and mom's inactions since [September] 2018."

Mother timely appeals.

## DID CLEAR AND CONVINCING EVIDENCE SUPPORT THE DISTRICT COURT'S UNFITNESS FINDING?

On appeal, Mother asserts three points of error, but we are only concerned with one, which is dispositive. Mother argues that the district court's findings are not supported by clear and convincing evidence.

Once a child has been adjudicated to be a child in need of care, as was done here, termination of parental rights is governed by K.S.A. 2018 Supp. 38-2269. This statute states that a district court may terminate the rights of a natural parent when it finds by clear and convincing evidence that: (1) the parent is unfit and unable to properly care for the child; (2) the conduct or condition that renders the parent unfit is unlikely to change in the foreseeable future; and (3) termination of parental rights is in the best interests of the child. See K.S.A. 2018 Supp. 38-2269(a), (g)(1); *In re D.H.*, 54 Kan. App. 2d 486, 488, 401 P.3d 163, *rev. denied* 307 Kan. 987 (2017).

Mother argues that the district court erred in finding her unfit and that her unfitness was unlikely to change in the foreseeable future. Specifically, she argues the district court did not explicitly indicate what facts or evidence it relied upon to reach its conclusion that Mother was unfit and the district court did not provide any details as to what facts supported its finding that her behavior was unlikely to change in the foreseeable future.

Clear and convincing evidence must support the district court's finding that the conduct or condition rendering Mother unfit is unlikely to change in the foreseeable future. See K.S.A. 2018 Supp. 38-2269(a). On appeal, we "determine whether the evidence, taken in the light most favorable to the State (since the district court ruled in its favor) could have convinced a rational factfinder that these facts were highly probable." *In re R.S.*, 50 Kan. App. 2d 1105, 1113, 336 P.3d 903 (2014).

"The 'foreseeable future' should be viewed from the child's perspective, not the parents', as time perception of a child differs from that of an adult." *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); see also *In re L.B.*, 42 Kan. App. 2d 837, 842, 217 P.3d 1004 (2009) ("[C]ourts must strive to decide these cases in 'child time' rather than 'adult time.'"), *rev. denied* 289 Kan. 1278 (2010). Mother's past conduct may be used as an indicator of her future behavior. See *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982); *In re M.T.S.*, No. 112,776, 2015 WL 2343435, at *8 (Kan. App. 2015) (unpublished opinion) ("Parental unfitness can be judicially predicted from a parent's past history.").

Initially, the district court did not conclude that Mother's condition was unlikely to change in the foreseeable future and gave Mother additional time to continue working on her case plan. Specifically, the district court held at the October 2018 hearing: "*The court does not find that mom's situation is unlikely to change*. Therefore, the matter is set over to determine whether mom has made progress." (Emphasis added.)

7

The district court held another hearing in February 2019 and, based on "mom's inactions since" the September 2018 hearing, terminated her parental rights. According to the record, some reports were provided to the parties. Mother's counsel stated, "I don't have any doubt the statements in the reports are correct." Yet no reports of any nature for this time frame appear in the record on appeal. There was no testimony regarding these reports, there was no proffer of the contents of any reports, and the district court made no indication in its oral or written ruling of the contents of the reports or on what facts it relied to make its unfitness finding.

Here, other than Mother's absence from the hearing, which her appellate counsel credits to a work obligation, there is *no* evidence in the record on appeal describing Mother's inactions in the months between the September and February hearings. Mother did have a positive UA in August 2018, and her sobriety was a continuing issue in this case. However, the district court knew of that positive UA at both the September and October hearings and still found there was not enough evidence to support the finding that Mother's unfitness was unlikely to change in the foreseeable future. Because no reports were admitted into evidence and no copies appear in the record on appeal, we are left with no evidence to support the district court's altered conclusion at the February 2019 hearing that Mother's unfitness was unlikely to change in the foreseeable future. As such, we must find there is not clear and convincing evidence supporting the district court's finding that Mother's unfitness was unlikely to change in the foreseeable future, and we reverse the termination of Mother's parental rights.

The case is remanded to the district court for further proceedings consistent with this opinion. The other issues raised by Mother in her appeal are moot, and we render no opinion on them.

Reversed and remanded.