NOT DESIGNATED FOR PUBLICATION

No. 125,054

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of K.R., T.A., and A.S.,
Minor Children.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; MICHAEL J. HOELSCHER, judge. Opinion filed September 30, 2022. Affirmed.

*Jordan E. Kieffer*, of Jordan Kieffer, P.A., of Bel Aire, for appellant natural mother.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, for appellee.

Before CLINE, P.J., ATCHESON and COBLE, JJ.

PER CURIAM: At the end of an evidentiary hearing, the Sedgwick County District Court found A.A.'s three children to be in need of care and ordered they remain in the legal custody of the Kansas Department for Children and Families (DCF), as a local social service agency implemented a plan for reunification of the family. A.A. has appealed the ruling and asserts insufficient evidence supports the district court's determination. We conclude the record establishes appropriate statutory grounds for the district court's conclusion as to each child, particularly the youngest, and we, therefore, affirm.

1

DCF intervened in late November 2021 when a medical provider at a Wichita hospital reported that A.A. brought A.S., her five-year-old son, to the emergency room insisting he had severe and immediately threatening health issues. The treating physicians discerned a pattern in which A.A. had taken the child to several other facilities in the preceding week or so and had gotten x-rays and other diagnostic tests done. A.A. wanted the testing repeated and became hysterically upset when she was told A.S. had no acute medical emergency. When A.A. attempted to leave with A.S. and loudly accused the medical staff of "fucking killing" the child, hospital security and Wichita police intervened. A law enforcement officer took A.S. into protective custody.

The district court granted emergency custody of A.S. to DCF. As part of its evaluation of the family situation, DCF had a hair follicle test of A.S. done that showed he had a measurable level of methamphetamine in his system. Given those circumstances, the agency sought and, in mid-December, was granted emergency custody of K.R., A.A.'s 12-year-old daughter, and T.A., her 10-year-old son The children are all half-siblings to each other. At the time, A.A. resided with a man who was not the biological father of any of the children. A hair-follicle test of T.A. was positive for methamphetamine. The State ultimately filed separate cases to have each child found in need of care. Those cases were consolidated in the district court for all relevant proceedings and remain consolidated on appeal.

As permitted under the Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq., A.A. requested an evidentiary hearing on whether K.R., T.A., and A.S. should be adjudicated in need of care. See K.S.A. 38-2248(e); K.S.A. 38-2251. The district court held the hearing in February 2022. K.R. and T.A. were then in the physical custody of relatives, and A.S. was in a foster care placement. All three were in the legal

custody of DCF. Given the district court's ruling, they remained so when A.A. filed this appeal.

GOVERNING LEGAL PRINCIPLES

Before turning to the evidence presented at the hearing and the district court's rulings now before us, we outline how the adjudication of a child as being in need of care fits in the overall statutory scheme under the Code. In broad terms, an action to find a child in need of care rests on the State's *parens patriae* interest in protecting the safety and welfare of children within its jurisdiction. See K.S.A. 38-2201(a) (proceedings under Code "deemed to be pursuant to the parental power of the state"); K.S.A. 38-2201(b)(1) ("safety and welfare of a child to be paramount in all proceedings under the code"); *In re L.B.*, 42 Kan. App. 2d 837, 842, 217 P.3d 1004 (2009) (recognizing *parens patriae* foundation for proceedings). A case may culminate in the termination of parental rights if necessary for the well-being of the child, thus extinguishing a fundamental constitutional right of a person to raise his or her offspring. See K.S.A. 38-2269 (grounds for terminating parental rights); *Santosky v. Kramer*, 455 U.S. 745, 753, 759-60, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) (fundamental right); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (same).

The adjudication of a child as being in need of care—commonly referred to as a CINC determination—typically comes early in the case and is usually followed by concerted efforts to reunify the family through detailed plans aimed at eliminating the deleterious conditions prompting the initial government intervention. DCF often contracts with nonprofit social service agencies to design and oversee those plans. If the reunification efforts fail, the State may move to terminate parental rights. So a CINC adjudication represents an intermediate step in the process. K.S.A. 38-2251. Parents may, nonetheless, appeal the adjudication of their children as being in need of care, as A.A. has done. K.S.A. 38-2273.

3

In a CINC hearing, the district court must find by clear and convincing evidence that the child meets the statutory definition for being in need of care. K.S.A. 38-2250 ("The petitioner must prove by clear and convincing evidence that the child is a child in need of care."); *In re B.D.-Y.*, 286 Kan. at 698-99. That is a comparatively demanding standard of proof exceeding the common civil standard of more probably true than not but lower than the criminal standard of beyond a reasonable doubt. See 286 Kan. 686, Syl. ¶ 2. An appellate court reviewing a CINC adjudication must be convinced, based on the full evidentiary record viewed in favor of the State as the prevailing party, that a rational fact-finder could have found that determination "highly probable, i.e., [proved] by clear and convincing evidence." 286 Kan. at 705. The appellate court cannot reweigh evidence, independently assess the credibility of witnesses, or otherwise decide factual disputes. 286 Kan. at 705. In other words, we now must resolve all evidentiary conflicts in the State's favor and against A.A.

The Code functionally defines "child in need of care" by providing 14 different ways a child may be found in need of care. K.S.A. 38-2202(d). A single statutory ground, if proved, is legally sufficient to support a CINC determination. See *In re F.C.*, 313 Kan 31, 44, 482 P.3d 1137 (2021) (affirming CINC adjudication where evidence clearly supported one of two statutory grounds on which district court relied); *In re A.M.D.*, No. 117,320, 2017 WL 3001352, at *2 (Kan. App. 2017) (unpublished opinion).

LEGAL PRINCIPLES APPLIED TO EVIDENTIARY RECORD

We look first at the evidence and the statutory grounds for adjudicating A.S. as being in need of care because that determination becomes the linchpin for the adjudications of his half-siblings.

A.S. is autistic and has significant developmental delays. At the time of the hearing, A.S. was nonverbal and not toilet trained. Much of A.S.'s daily care, such as

4

changing his diapers, apparently fell to A.A.'s live-in companion. The evidence indicates A.A. repeatedly took A.S. to physicians and frequently requested specific diagnostic or treatment options, sometimes for life threatening conditions. For a time, A.A. voiced concern that A.S. had severe renal dysfunction—something never medically substantiated. A.A. regularly changed primary care physicians for A.S., as each discounted her pleas for further examination and testing of the child. As we have indicated, A.A. serially took A.S. to several hospitals over about a week's time in November 2021 seeking testing and an invasive biopsy of the child because she represented he might have leukemia. Again, no medical evidence supported that representation.

A.A. attributed various symptoms to A.S., including projectile vomiting, swelling of the extremities, and almost immobilizing back pain. She insisted A.S. was likely dying and his physicians were failing to properly diagnose his condition. At Wesley Medical Center, the last hospital to which A.A. took A.S. in November 2021, Dr. Katherine Melhorn met with A.A. at the request of another physician. Dr. Melhorn is employed by the University of Kansas School of Medicine and is a pediatrician with special expertise in child abuse cases. Those cases include instances of medical child abuse in which a parent or caregiver repetitively seeks unnecessary and often invasive examinations or treatments for a youngster despite assurances from healthcare providers the child requires no such care. That persistent behavior is considered a form of mental illness often referred to as factitious disorder imposed on another.

After A.S. was taken into protective custody, he remained at the hospital for several days. He did vomit a number of times early on, especially after eating—something possibly caused by his being severely constipated. A.S.'s treating physicians observed none of the other symptoms A.A. reported. A.S. did not have leukemia or any other acute illness or condition.

During the adjudication hearing, Dr. Melhorn was qualified as an expert and testified that A.A. subjected A.S. to medical child abuse by continually seeking extensive diagnostic tests and treatments for him for serious diseases or conditions that couldn't be medically documented. Dr. Melhorn testified that if left unchecked, A.A.'s behavior posed a risk to A.S.'s health and well-being. He could be subjected to unnecessary and invasive diagnostic procedures and possibly treatment. The State did not present evidence that A.S. experienced the repeated hospital visits or A.A.'s volatile behavior at Wesley Medical Center as emotionally upsetting or destabilizing.

The State introduced the results of the hair follicle tests for A.S. and T.A., showing measurable amounts of methamphetamine. The State also established that A.A. refused to take at least two drug tests after her children were removed to DCF's custody. At the hearing, A.A. testified that she did not use drugs or alcohol and offered no explanation as to how A.S. or T.A. might have tested positive. A.A. said she refused drug testing because she believed it was unduly intrusive and inappropriate until the State proved its case.

The district court specifically credited Dr. Melhorn's testimony and found A.S. to be a child in need of care based on three statutory grounds: (1) He "[i]s without adequate parental care, control[,] or subsistence" unrelated to his parents' financial means, as provided in K.S.A. 38-2202(d)(1); (2) he "is without the care or control necessary for the child's physical, mental[,] or emotional health," as provided in K.S.A. 38-2202(d)(2); and (3) he "has been physically, mentally[,] or emotionally abused," as provided in K.S.A. 38-2202(d)(3). The first two grounds refer to the child's circumstance at the time of the adjudication hearing and the third refers to anytime leading up to CINC proceedings. See *In re F.C.*, 313 Kan. 31, Syl. ¶¶ 2-3.

A.A. challenges the sufficiency of the evidence supporting those determinations and, as a subsidiary issue, says the hair follicle test results for both A.S. and T.A. were

improperly admitted as evidence at the adjudication hearing and, therefore, cannot be considered. On appeal, A.A. contends the test results were not accompanied by a certificate conforming to K.S.A. 38-2249(b)(2), permitting their admission without a sponsoring witness. The point fails because A.A. did not preserve that objection at the hearing, and it cannot be raised for the first time now. See K.S.A. 38-2249(a) (rules of evidence apply under the Act); K.S.A. 60-404 (contemporaneous objection required to preserve challenge to admission of evidence).

Without belaboring the matter, the record shows A.A. represented herself with standby counsel at the start of the adjudication hearing. She personally lodged an objection to the test results and then asked to speak with standby counsel. After doing so, A.A. announced she wished to be represented by the lawyer for the remainder of the hearing. The district court granted her request. The lawyer then withdrew the objection to the test results, and they were admitted. That disposes of the point adversely to A.A., since there ultimately was no objection before the district court. As an aside, we mention that it is not readily apparent that the affidavits accompanying the test results were legally insufficient under K.S.A. 38-2249(b), but we need not reach that question.

For our purposes, the first two grounds for adjudicating A.S. in need of care functionally overlap. At the time of the hearing, A.A. labored under a disorder leading her to seek unnecessary medical care and treatment for A.S. and causing her to react volatilely when physicians challenged her contentions. As Dr. Melhorn testified, A.A.'s uncontrolled behavior placed A.S. at considerable risk for unnecessary and intrusive medical tests and otherwise needlessly disrupted his daily activities. Dr. Melhorn characterized this as a form of medical child abuse. A.A.'s unchecked behavior displayed a lack of care for A.S.'s physical health, satisfying K.S.A. 38-2202(d)(1) and (2). Likewise, A.A.'s past conduct demonstrated the same lack of care, thereby supporting the district court's finding under K.S.A. 38-2202(d)(3). The district court credited Dr. Melhorn's testimony, and her testimony was unrebutted by any competing expert opinion.

7

On appeal, A.A. counters that the evidence indicates she was a well-meaning parent attempting to look out for a child with special needs. Although that seems to reflect an especially antiseptic reading of the record, it is essentially irrelevant. The Act is geared toward protecting the physical, mental, and emotional health of children neglected or otherwise placed at risk by their parents or caregivers. And the State may intervene to further that objective without regard to the parent's intent or state of mind if a child is at risk and meets the statutory definition for being a child in need of care. Cf. *In re M.P.*, No. 119,444, 2019 WL 2398034, at *4 (Kan. App. 2019) (unpublished opinion) ("[P]arental unfitness under the Code is not fault based but, rather, turns on a parent's ability to sufficiently care for his or her child."). In short, good intentions do not amount to a defense in a child in need of care proceeding.

A.S.'s positive test for exposure to methamphetamine not only bolsters the district court's determination but also provides an independent basis for it. Methamphetamine is a particularly insidious illegal drug with myriad adverse effects on those ingesting it. Here, A.S. was inexplicably exposed to the drug while in A.A.'s care and custody—a circumstance that standing alone suggests a lack of due care. Moreover, A.A. adamantly refused to take drug tests after her children had been placed in State custody. The refusal itself can be construed as circumstantial evidence that A.A. knew she would have tested positive for some controlled substance notwithstanding her protestations otherwise. See *In re P.L.*, No. 120,220, 2019 WL 2063874, at *3 (Kan. App. 2019) (unpublished opinion) ("We have inferred illegal drug use in termination cases based on a parent's deliberate and ongoing avoidance of drug testing."). The confluence of A.S.'s positive test and A.A.'s refusal to test supports a finding the child was and remained in need of care based on a continuing risk of exposure to methamphetamine in the home or more broadly while in his mother's custody. The determination, in turn, warrants State intervention through an approved social service agency to address the matter of illegal drug abuse and to formulate a corrective plan, if necessary.

In sum, the district court's determination that A.S. is a child in need of care finds ample support in the record evidence.

The district court found both K.R. and T.A. to be in need of care based on the three statutory grounds applicable to A.S. and also because they had been residing in the same household with a sibling under 18 years of age "who has been physically, mentally[,] or emotionally abused or neglected, " as provided in K.S.A. 38-2202(d)(11). A.S. obviously is the abused or neglected sibling triggering K.S.A. 38-2202(d)(11). Given our conclusion that the district court properly adjudicated A.S. as a child in need of care, the district court likewise correctly concluded his older siblings were in need of care, since they resided with him. And that alone is sufficient to support the district court's rulings as to K.R. and T.A.

The adjudication hearing evidence indicated that K.R. and T.A. are comparatively typical children for their ages with neither special needs nor demonstrable adjustment issues, such as truancy or delinquency. The State offered no evidence they were unkempt, unfed, or otherwise visibly neglected. But T.A. tested positive for methamphetamine, although at a much lower level than A.S. For the same reasons that circumstance, coupled with A.A.'s refusal to test and related evidence, established A.S. to be in need of care, it does so for T.A.

By the same token, however, we have difficulty concluding the State offered evidence that would persuade a fact-finder to a high degree of probability that K.R. was in need of care under K.S.A. 38-2202(d)(1), (2), or (3). She does not appear to have been left without care or control and has not herself been abused or neglected. But, as we have explained, K.R. met the statutory criterion for a child in need of care in K.S.A. 38-2202(d)(11).

Affirmed.

9