NOT DESIGNATED FOR PUBLICATION

No. 120,999

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of I.R., a Minor Child.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARY E. CHRISTOPHER, judge. Opinion filed October 11, 2019. Affirmed.

*Rachel L. Hockenbarger*, of Topeka, for appellant natural mother.

*Morgan L. Hall*, deputy district attorney, and *Michael F. Kagay*, district attorney, for appellee.

*Jennifer Martin Smith*, of Alderson, Alderson, Conklin, Crow & Slinkard, L.L.C., of Topeka, guardian ad litem.

Before STANDRIDGE, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: A.W. (Mother) appeals the district court's order terminating her parental rights to her son, I.R. Mother challenges the sufficiency of the evidence to prove she was an unfit parent or that her unfitness was unlikely to change in the foreseeable future. Mother also contends it was not in I.R.'s best interest for the district court to terminate her parental rights. However, the evidence reflects Mother failed to cooperate with the agencies tasked to help her and to reintegrate the child back into Mother's home upon Mother showing she had the ability to parent her child. The district court's decision to terminate Mother's parental rights is supported by clear and convincing evidence and is in I.R.'s best interest. Father is not a party to this appeal. We affirm.

1

FACTUAL AND PROCEDURAL HISTORY

I.R. was born in February 2015. Mother is a member of the Prairie Band Potawatomie Tribe, but Father's ancestry is unknown. After receiving a report about potential drug use in the home—allegations further supported by the fact I.R.'s umbilical cord tested positive for THC at birth—as well as domestic violence and mental health concerns for Mother, the Kansas Department for Children and Families (DCF) unsuccessfully sought to meet with Mother in April 2015 to obtain additional information. Over the next month, DCF received reports of medical neglect. I.R. was born prematurely and during delivery suffered a broken arm. DCF received reports I.R. was not attending his medical appointments on a regular and consistent basis. There was also a concern about the "questionable" living conditions of the home.

Additional attempts by DCF to contact Mother were largely unsuccessful. As a result, the State filed a petition in May 2015 alleging I.R. was a child in need of care (CINC) pursuant to K.S.A. 2014 Supp. 38-2202(d)(1), (d)(2), and (d)(3). The court placed I.R. in DCF custody.

The district court held a temporary custody hearing and found the Indian Child Welfare Act (ICWA) applied, ordering DCF to "make all possible efforts to place [I.R.] with a [sic] Native American relative or Native American approved placement." The court also ordered DCF to follow ICWA in regards to placement and visitation, and ordered both parents to complete a urinalysis (UA) drug test. After the hearing, an ICWA Notice was sent to the Prairie Band Potawatomie Nation (PBPN) along with a copy of the CINC petition.

In July 2015, the district court reaffirmed DCF custody and approved an order of informal supervision (OIS). In April 2016, the court extended the OIS for six months and

ordered I.R. to remain in DCF custody but with out-of-home placement with maternal grandmother (Grandmother). In July 2016, the court revoked the OIS.

I.R. was adjudicated as a CINC based on no contest stipulations entered by Mother and Father in October and November 2016. The court ordered I.R. to remain in DCF custody and entered a dual case plan goal of reintegration or adoption.

At a permanency hearing in March 2017, the district court found appropriate public or private agencies had made reasonable efforts to reintegrate I.R. into the home of his parents, but the parents had not made adequate progress. The court found reintegration continued to be a viable goal for the parents to work on.

In June 2017, the State filed a notice of ICWA determination from the PBPN stating I.R. was not eligible for membership.

The State moved to terminate the parental rights of Mother and Father in June 2017, and served Mother with a copy of the motion at a review hearing on June 26, 2017. The motion asserted presumptions for unfitness pursuant to K.S.A. 2016 Supp. 38-2271(a)(5) and (a)(6) and alleged Mother and Father were unfit because of:

"(1) [F]ailure of reasonable efforts by agencies to rehabilitate the family [K.S.A. 38-2269(b)(7)]

"(2) [L]ack of effort on the part of parents to adjust their circumstances, conduct or condition to meet the needs of the child [K.S.A. 38-2269(b)(8)]

"(3) [F]ailure to assure care of the child in the parental home when able to do so [K.S.A. 38-2269(c)(1)]

"(4) Failure to maintain regular visitation, contact or communication with the child or with the custodian of the child [K.S.A. 38-2269(c)(2)]; and

3

"(5) [F]ailure to carry out a reasonable plan approved by the court directed toward the integration of the child into the parental home [38-2269(c)(3)]."

At a review hearing in August 2017, Mother asserted membership in the Kickapoo, Sac and Fox, Winnebago, and Pueblo tribes. The court found good cause to continue the hearing in order to receive ICWA eligibility determinations from those tribes. The State later received notices from the tribes identified by Mother that I.R. was not eligible for membership.

At a review hearing in January 2018, the district court determined ICWA did not apply. The court also found despite reasonable efforts by the appropriate public or private agencies, reintegration with Mother was no longer a viable goal. The court determined adoption would be in I.R.'s best interests. The court also terminated Father's rights for being in default. On appeal, Mother makes no argument that ICWA applies in this case, so we do not discuss the point further.

The district court conducted a trial on the motion for termination on April 24, 2018. At the trial, caseworkers testified:

- Mother was at first cooperative but had "significant reservations about working with any agency."
- Mother had unsupervised visits near the beginning of the case but eventually those visits became supervised and then stopped occurring officially because Mother was difficult to contact. Mother did not have an active phone number or a listed address, and she often missed scheduled meetings with caseworkers.
- Mother struggled with housing at first but found a home near Grandmother at some point. After the summer or early fall of 2016, KVC could not

4

determine whether Mother had adequate housing because they did not have a verifiable address on file.

- Drug use could not be ruled out as a concern because Mother refused to take UAs and hair follicle tests, citing "cultural beliefs." However, PBPN representatives told caseworkers the tribe provided drug and alcohol services and testing and there was no cultural reason not to allow UAs and other types of drug testing; all Mother had to do was sign a release to allow the PBPN representatives to send the testing results to KVC.

- Mother initially received mental health services from PBPN but those services discontinued at some point. KVC never received a release to discuss any other information regarding Mother's involvement in mental health and domestic abuse services with the tribe.

- At a meeting with Mother, Grandmother, and agency representatives about a month before trial, the caseworkers tried to "turn around" the case to get Mother back on track towards reintegration. PBPN representatives were also invited to attend but did not attend. Mother became upset and refused to cooperate at the meeting. Mother claimed ICWA applied and she would see everyone in court.

Mother testified she:

- Met with counselors from tribal services for domestic violence concerns with Father and they did not recommend additional counseling. She refused to sign any releases for her counseling sessions.

- Lived in three homes during the case and KVC was only aware of the first address because she "[did not] trust KVC."

- Had several sources of income, including per capita payments from PBPN, a settlement, and Social Security disability payments. Mother did not

5

provide specific numbers for her income but agreed her income was adequate to meet I.R.'s needs.

- Refused to provide her hair for drug tests for religious reasons but had completed UAs while on probation in another case.

After hearing the evidence, the district court found the evidence showed Mother refused to cooperate with KVC throughout the life of the case, and she refused to provide necessary documentation to confirm she had completed her case plan tasks.

At the conclusion of the termination hearing, Mother agreed to submit to a UA at the court's request and complete a limited release for her mental health records. Next, the court admonished Mother to complete her remaining case plan tasks and ordered her to provide proof of their completion within 30 days. Finally, the court advised Mother her failure to fulfill this order would lead to termination of her parental rights.

On May 25, 2018, Mother submitted a packet of documents to the district court, containing:

"a. A 4-page letter to the Court;

"b. Letter from the Social [S]ecurity Administration advising that Mother's primary disability diagnosis is a personality disorder with a secondary diagnosis of affective/mood disorders;

"c. A letter from the local SSA office indicating Mother received $2,701.51 in SSI benefits from January to May 2018, and stating the amount would be $0.00 beginning June 2018;

"d. Negative UA drug screen performed on the day of trial, April 24, 2018;

"e. Installment agreement made by [Grandmother purchasing a home in] Topeka, Kansas.

"f. March 6, 2018 letter from Mother's attorney to PBPN language department, requesting someone listen to [I.R.]'s speech to determine if he was speaking 'Pottawatomie' when not speaking English;

6

"g. Copies of documents previously produced reflecting Mother's genealogy and enrollment in the PBPN;

"h. Certificate of completion indicating mother completed a 4-hour parent education and family stabilization course."

Mother's counsel also filed a notice of provision of documents along with two documents which Mother believed "address[ed] her remaining tasks." The attached documents were: a copy of a letter from the PBPN Tribal Victim Services program as "proof of domestic violence counseling with the Tribe," and a copy of Mother's Topeka Metro bus pass as "proof of transportation."

In October 2018, after receiving Mother's packet of documents, the district court issued a memorandum decision terminating Mother's parental rights. The court found by clear and convincing evidence Mother was statutorily unfit as a parent because she was "unable/unwilling to complete case plan tasks necessary for reintegration; Mother has a history of criminal activity; and Mother has chronically failed to cooperate with agency workers attempting to provide assistance." The court determined Mother was "unfit by reasons of conduct or condition which renders [Mother] unable to properly care for [I.R.], pursuant to K.S.A. 2018 Supp. 38-2269(b)(7); (b)(8); (c)(1); (c)(2); (c)(3); and K.S.A. 2018 Supp. 38-2271(a)(5) and (a)(6)."

Similarly, the court held by "clear and convincing [evidence] that, due to the duration of Mother's unfitness, and the chronic nature of shortcomings in spite of the numerous public and private services offered her, Mother's conduct or condition is unlikely to change in the foreseeable future."

Finally, the court determined after "[c]onsidering the physical, mental and emotional health of [I.R.], termination of Mother's parental rights is in the best interest of

7

[I.R.], and [his] physical, mental or emotional needs . . . would best be served by termination of parental rights."

ANALYSIS

Mother now raises two issues on appeal: (1) there was insufficient evidence to find she was unfit as a parent and her conduct or condition rendering her unfit was unlikely to change in the foreseeable future; and (2) the district court abused its discretion in determining termination of her parental rights was in I.R.'s best interests.

*Standard of Review*

A parent has a constitutionally recognized right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*, 455 U.S. at 758-59). Accordingly, the State may terminate parental rights for a child only upon clear and convincing proof of parental unfitness. K.S.A. 2018 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2018 Supp. 38-2269(a), the district court must find by clear and convincing evidence the parent is unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and the circumstances are "unlikely to change in the foreseeable future." When we review a district court's termination of parental rights, we view all the evidence in the light most favorable to the State to determine whether a rational fact-finder could have found it highly probable by clear and convincing evidence parental rights should be terminated. *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, we will not weigh

8

conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705.

The statute contains a nonexclusive list of nine factors to consider individually or in combination to support a parent's unfitness. See K.S.A. 2018 Supp. 38-2269(b). The statute also lists four other factors to be considered if a parent no longer has physical custody of a child. See K.S.A. 2018 Supp. 38-2269(c). Any one of these factors may, but does not necessarily, establish grounds for termination of parental rights. See K.S.A. 2018 Supp. 38-2269(f). In addition, the court may rely on one or more of the statutory presumptions set out in K.S.A. 2018 Supp. 38-2271(a) to find a parent unfit.

*Parental fitness*

The district court found Mother to be unfit as a parent on the following statutory grounds:

- "[F]ailure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family" under K.S.A. 2018 Supp. 38-2269(b)(7);
- "[L]ack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child" under K.S.A. 2018 Supp. 38-2269(b)(8);
- "[F]ailure to assure care of the child in the parental home when able to do so" under K.S.A. 2018 Supp. 38-2269(c)(1);
- "[F]ailure to maintain regular visitation, contact or communication with the child or with the custodian of the child" under K.S.A. 2018 Supp. 38-2269(c)(2); and
- "[F]ailure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home" under K.S.A. 2018 Supp. 38-2269(c)(3).

9

Mother contends the district court erred by finding her unfit, disputing each of the five statutory grounds the court relied on and addressing each statutory provision separately. The State and I.R.'s guardian ad litem (GAL) both focus their arguments on Mother's refusal to cooperate with KVC in completing the case plan tasks.

### a.     Mother was unfit

Although Mother individually addresses each statutory ground of unfitness cited by the district court, her arguments on each ground are similar because she contends the "agency's demands" that she adhere to the case plan or provide documentation to verify her progress were unreasonable given her religious/cultural beliefs and her distrust of the caseworkers. Mother seems to be suggesting—but provides no relevant legal authority to support—the district court should have focused solely on whether I.R.'s needs were being met. We are not persuaded the district court erred by finding the evidence reflects Mother's consistent refusal to cooperate with the caseworkers rendered her unfit as a parent.

Both the State and the GAL assert the agency's attempts at reasonable efforts to rehabilitate the family were thwarted by Mother's constant refusal to participate in the case plan. We note other panels of this court have stated the purpose of K.S.A. 38-2269(b)(7) is to provide a parent with the opportunity to succeed, but the parent must still exert some effort and cannot refuse to cooperate with the agencies. See *In re L.C.P.*, No. 118,841, 2018 WL 4039170, at *9 (Kan. App. 2018) (unpublished opinion), *rev. denied* 309 Kan. 1348 (2018). Mother provides no authority to dispute this point.

Mother contends the State failed to show by clear and convincing evidence she did not successfully complete the case plan tasks. She also claims several of the case plan goals were irrelevant to I.R.'s care, specifically those requiring Mother to (1) address "co-sleeping" with I.R.; (2) complete a culturally sensitive parenting assessment, if necessary;

10

and (3) work with her attorney to create a custody arrangement with Father, whose parental rights were terminated in January 2018. We agree these three points are not as relevant now as they were at the beginning of the case plan, but that does not excuse Mother from complying with the other requirements in the case plan.

However, our review of the record reveals sufficient evidence Mother did not complete or provide proof she completed most of the case plan tasks directed at reintegration. The only case plan task all parties agree Mother completed was to obtain and maintain a transportation plan when she provided a copy of her city bus pass.

Consistent with the district court's findings, the record shows Mother refused to sign releases relating to domestic violence services and mental health treatment through PBPN. Mother also provided no documentation to show she had safe and stable housing, and she admitted she refused to give her current address to caseworkers. As to income, Mother testified she received a per capita payment from PBPN, SSI disability payments, and a legal settlement, but she provided no documentation to show the total amount of her monthly income. The documents provided showed Mother's current SSI income would no longer be received after June 2018.

Mother also asserts the State presented no evidence to show substance abuse or mental health contributed to her being unfit as a parent. But as the State notes, the motion for termination did not include those factors as statutory grounds for unfitness, but the *case plan* required Mother to submit to random UAs and to address mental health concerns that arose from the allegations in the CINC petition. Mother consistently refused to complete UAs because of her claimed religious or cultural beliefs. However, caseworkers testified tribal representatives cited no cultural concerns with completing UAs, and the tribe even offered resources to help Mother comply with the court order.

Even after PBPN's offer, Mother failed to contact anyone or sign a release to show she had completed any UAs or engaged in mental health counseling to address her case plan tasks.

The record contains clear and convincing evidence Mother failed to complete her case plan, despite reasonable efforts by the relevant involved agencies to help her comply. See K.S.A. 2018 Supp. 38-2269(b)(7), (c)(3).

b.      *Statutory presumptions of unfitness apply*

But even if the State failed to establish these grounds of unfitness by clear and convincing evidence, the district court still would not have erred because Mother failed to rebut the presumptions of unfitness on which the district court relied.

Along with the five statutory grounds of unfitness discussed above, the district court also found Mother was unfit as a parent based on two presumptions of unfitness under K.S.A. 2018 Supp. 38-2271(a)(5) and (a)(6). Under these provisions, a parent will be presumed unfit if the State establishes by clear and convincing evidence that either: (1) the child has been in an out-of-home placement under court order for a cumulative total period of at least one year and "the parent has substantially neglected or willfully refused to carry out" a reasonable court approved parenting plan; or (2) the child has been in an out-of-home placement under court order for a cumulative total period of at least two years and "the parent has failed to carry out" a reasonable court approved parenting plan and there exists a "substantial probability that the parent will not carry out such plan in the near future." K.S.A. 2018 Supp. 38-2271(a)(5) and (a)(6). If either presumption applies, "[t]he burden of proof is on the parent to rebut the presumption of unfitness by a preponderance of the evidence" K.S.A. 2018 Supp. 38-2271(b).

To support its determination these presumptions applied, the district court cited Mother's inability or unwillingness to complete case plan tasks necessary for reintegration; her chronic failure to cooperate with agency workers attempting to provide assistance; and her refusal to provide requested information or cooperate with the agency. The record shows I.R. was in out-of-home placement for at least 35 months at the time of the termination trial and he was about 37 months old.

### i. Mother abandoned this issue

Mother claims the presumption should not be applied because the delay in the case should not be attributed to her failure to make any progress but rather to the length of time it took for the court to make an ICWA determination. Mother's argument is unpersuasive because Mother still failed to participate in the case plan even during the time it took to determine if ICWA applied. And as discussed earlier, Mother abandoned any challenge to the court's ICWA determinations because she failed to brief the issue.

Put another way, Mother fails to brief whether the district court erred by finding clear and convincing evidence reflected she had "substantially neglected or willfully refused to carry out" a reasonable court approved parenting plan after more than a year of out-of-home placement; or that she had "failed to carry out" a reasonable court approved plan after more than two years of out-of-home placement and there was a "substantial probability" she would not do so in the near future. See K.S.A. 2018 Supp. 38-2271(a)(5) and (a)(6). As a result, Mother has abandoned this issue. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (point raised incidentally in a brief and not argued therein deemed abandoned).

### ii. *Mother fails to rebut the presumptions*

Even if Mother had argued this issue in her brief, the district court did not err because the State presented sufficient evidence to support these presumptions and Mother did not successfully rebut either presumption below. The record shows Mother repeatedly refused to provide necessary information or releases to help the agencies monitor her progress and determine if she was complying with the case plan. The record reflects Mother told caseworkers "ICWA applied" and she would "see [them] in court." Finally, Mother did submit additional documents after the trial, as ordered by the court, but the documents provided were a rehash of her previous claims and failed to show she had complied with the court approved reintegration plan.

*Unlikely to change in the foreseeable future*

Clear and convincing evidence must also support the district court's finding the conduct or condition rendering Mother unfit is unlikely to change in the foreseeable future. K.S.A. 2018 Supp. 38-2269(a). In gauging the foreseeable future, we use "child time" as the measure. As recognized by K.S.A. 2018 Supp. 38-2201 et seq., children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that difference in perception typically tilts toward a prompt, permanent disposition. K.S.A. 2018 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re J.S.*, No. 120,193, 2019 WL 1967952, at *4 (Kan. App. 2019) (unpublished opinion) (citing *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 [Kan. App. 2013] [unpublished opinion] ["'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's"]), *petition for rev.* filed May 29, 2019.

A review of the evidence shows at the time of the termination trial, I.R. was 37 months old and had spent 35 months in DCF custody. The record reflects Mother either

refused to cooperate with the caseworkers or failed to adjust her circumstances to address the concerns in the case plan—her mental health, domestic violence, drug use, and housing. A rational fact-finder could have found it highly probable by clear and convincing evidence Mother's refusal to cooperate would continue in the foreseeable future. Thus, the district court's finding Mother's conditions of unfitness were unlikely to change in the immediate or foreseeable future was supported by clear and convincing evidence.

*Best interests finding*

Upon making a finding of unfitness of the parent, the district court must consider whether "termination of parental rights . . . is in the best interests of the child." K.S.A. 2018 Supp. 38-2269(g)(1). In making such a decision, the court gives primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2018 Supp. 38-2269(g)(1). The district court makes that determination based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1116. The best interests issue is essentially entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16.

We review a court's best interests determination for an abuse of discretion. An abuse of discretion

> "occurs when no reasonable person would agree with the district court or the district
> court premises its decision on a factual or legal error. In determining whether the district
> court has made a factual error, we review any additional factual findings made in the
> best-interests determination to see that substantial evidence supports them. [Citation
> omitted.]" *In re R.S.*, 50 Kan. App. 2d at 1116.

Here, the district court did not make extensive findings, concluding only after "[c]onsidering the physical, mental and emotional health of the child, termination of

15

Mother's parental rights is in the best interest of [I.R.], and the physical, mental or emotional needs of the child would best be served by termination of parental rights."

Mother cites *In re J.W.*, No. 112,668, 2015 WL 8590309 (Kan. App. 2015) (unpublished opinion), as support for her argument termination was not in I.R.'s best interests. In *In re J.W.*, a panel of this court found an abuse of discretion because the district court improperly analyzed the mother's shortcomings as a *primary consideration* when making the best interests finding. 2015 WL 8590309, at *13-14. This case is distinguishable because here the district court explicitly noted it had considered the "physical, mental and emotional health of the child."

Mother also argues the district court should have conducted a "'balancing test'" when making the best interests determination, citing *In re L.B.*, 42 Kan. App. 2d 837, 841-42, 217 P.3d 1004 (2009). However, as the State correctly acknowledges, another panel of this court recently held Mother's argument misstates the holding in *In re L.B.* (citing *In re R.G.*, No. 120,300, 2019 WL 2063611, at *7 [Kan. App. 2019] [unpublished opinion]). The panel in *In re L.B.* specifically considered whether a mother could untimely appeal a temporary placement order and the CINC finding along with the termination of her parental rights. See 42 Kan. App. 2d at 842-43. Mother makes the same argument as the mother in *In re R.G.*, asserting the district court needed to balance her fundamental right to parent her child along with the interests of the State in protecting children. This argument is not persuasive for precisely the same reason because a previous panel concluded: "*In re L.B.* does not impose a rigid requirement for courts to perform an overt, on-the-record 'balancing test' to determine a child's best interests." *In re R.G.*, 2019 WL 2063611, at *7.

For these reasons, we find there was clear and convincing evidence to support the district court's decision to terminate Mother's parental rights, and a reasonable person would agree with the district court's conclusion termination was in the best interests of

16

the child. We find no abuse of discretion in the district court's finding termination was in I.R.'s best interests.

Affirmed.