NOT DESIGNATED FOR PUBLICATION

No. 127,132

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of M.C. and J.M.,
Minor Children.

MEMORANDUM OPINION

Appeal from Johnson District Court; KATHLEEN SLOAN, judge. Submitted without oral argument. Opinion filed December 6, 2024. Affirmed.

*Jeffrey Leiker*, of Leiker Law Office, P.A., of Overland Park, for appellant natural mother.

*Maria C. Davies*, assistant district attorney, and *Stephen M. Howe*, district attorney, for appellee.

Before ATCHESON, P.J., CLINE and PICKERING, JJ.

PER CURIAM: In a procedurally unusual hearing, the Johnson County District Court terminated M.D.C.'s right to parent her daughter M.C. and her son J.M. On appeal, Mother challenges the sufficiency of the evidence. The State presented its case for termination through a proffer, and Mother offered no opposing evidence—a process she and her lawyer accepted. The record established sufficient grounds for the termination order, so we affirm the district court.

FACTUAL AND PROCEDURAL HISTORY

The State simultaneously filed separate child in need of care cases in November 2020 for M.C., then barely 2 years old, and J.M., then 10 months old, when Mother stabbed the children's father in their presence. The record indicates Father has chronically

1

abused alcohol and he and Mother had some history of domestic violence. The children went into an out-of-home placement where they remained throughout these cases. The district court handled the case in tandem and then consolidated them for appeal.

At the direction of the district court and in conjunction with the Kansas Department for Children and Families, a social service agency designed and implemented family reunification plans for Mother and Father. Over the next two years, Mother failed to achieve the objectives the social service agency outlined for her to regain custody of her children. The State filed motions to terminate Mother's and Father's parental rights.

At the termination hearing in January 2023, Mother and Father appeared with their lawyers and stipulated they were then unfit under K.S.A. 38-2269(c)(3) because they had, in the statutory language, "fail[ed] to carry out a reasonable plan approved by the court directed toward the integration of the child[ren] into a parental home." The district court then continued the proceedings, allowing Mother and Father additional time to undertake various designated tasks for family reunification. Both parents agreed to this bifurcated process, an atypical approach to judicial determination of unfitness and termination.

The district court reconvened the termination hearing in mid-August 2023 with Mother, Father, their respective lawyers, the guardian ad litem for the children, representatives of the social service agency, and others. Father's lawyer informed the district court that the parties had agreed to proceed this way: Mother and Father would each make an unsworn statement to the district court. They would then leave, although their lawyers would remain. The State would proffer its anticipated evidence bearing on unfitness, foreseeability of change, and the children's best interests—the legal grounds governing termination—without objection from the lawyers. The assistant district attorney representing the State and Mother's lawyer both confirmed the agreement. Mother's lawyer added that he had explained to Mother that after she made a statement, the State would simply recite what its evidence would be. The lawyer indicated Mother

2

had at least several days to consider and then to accept the arrangement. This, too, is an atypical way of handling a termination hearing.

Without further discussion, Mother and Father each made a statement to the district court about why their parental rights should not be terminated. In a colloquy after that, Mother's lawyer reiterated, "We agreed to the proffer, so we're not objecting to it." Father's lawyer made a similar representation. The district court asked, "[S]he's waiving her right to be present during the—during the proffer trial; is that correct?" Mother personally answered, "Yes." Father made a comparable acknowledgment. The district court did not inquire further of Mother or Father and took a short recess while they left.

The assistant district attorney then made an oral proffer of the State's anticipated evidence supporting termination of Mother's and Father's parental rights. He laid out some of the procedural history of the cases and specifically mentioned the January 2023 hearing, noting the parents' stipulation of unfitness and the district court's direction about certain tasks each parent needed to complete. As to Mother, the proffer showed:

• As of mid-August, Mother had no suitable housing for herself and the children, even though M.C. and J.M. had been in an out-of-home placement for more than two-and-a-half years.

• In attempting to verify Mother's employment, the social service agency learned in January 2023 that she had been fired several months earlier from a job with a retail store for "stealing." Mother still claimed she worked there. The social service agency could not verify any other full-time employment for Mother.

• Mother had no driver's license and no regular means of transportation.

3

• The social service agency continued to have "a concern with domestic violence" and Mother's failure to access appropriate "mental health therapy." Mother reported that she felt unsafe around Father and described their relationship as toxic.

• The social service agency assessed Mother and Father to be "essentially in the same spot" as they were when they stipulated to unfitness under K.S.A. 38-2269(c)(3) in January 2023.

• The children are "flourishing" in their present placement. The placement caregiver for the children is a potential adoption option and wishes to explore that possibility.

The district court found both Mother and Father to be unfit under: (1) K.S.A. 38-2269(b)(7) because reasonable efforts of the social service agency to reunify the family failed; (2) K.S.A. 38-2269(b)(8) because of their lack of effort to adjust their circumstances to meet the needs of the children; and (3) K.S.A. 38-2269(c)(3). The district court concluded the unfitness was unlikely to change in the foreseeable future and the best interests of the children supported termination of Mother's and Father's parental rights. Mother had appealed with a new appointed lawyer.

Although not directly relevant here, Father did little to perform the tasks for reunification. He appealed the district court's order terminating his parental rights, and another panel of this court has affirmed that decision. *In re M.C.*, No. 126,974, 2024 WL 2104511, at *1 (Kan. App. 2024) (unpublished opinion), *rev. denied* 319 Kan. ___ (August 30, 2024).

4

On appeal, Mother challenges the sufficiency of the evidence supporting the district court's decision to terminate her parental rights.

Parents have a fundamental constitutional right to raise their children. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008) (citing *Santosky*). And the State has a concomitant *parens patriae* interest in the welfare of minors within its borders that permits intervention with families where conditions threaten the physical, emotional, or mental health of minor children. See K.S.A. 38-2201(a) (child in need of care proceedings "deemed to be pursuant to the parental power of the state"); K.S.A. 38-2201(b)(1) ("safety and welfare of a child to be paramount in all proceedings under the code"); *In re L.B.*, 42 Kan. App. 2d 837, 842, 217 P.3d 1004 (2009) (recognizing *parens patriae* foundation for proceedings). In balancing those sometimes competing societal objectives, the district court may terminate parental rights only upon clear and convincing evidence establishing ongoing unfitness. K.S.A. 38-2269(a) (district court must "find[] by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for [the] child and the conduct or condition is unlikely to change in the foreseeable future"); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

In considering a parent's unfitness, the district court may apply the grounds outlined in K.S.A. 38-2269(b) and if the child has been removed from the home for an extended time, the additional factors in K.S.A. 38-2269(c). Here, the district court drew from both of those sources to find Mother unfit. A single factor may be sufficient to establish unfitness. See K.S.A. 38-2269(f).

In reviewing a district court's termination order, we do not reweigh the evidence and, in turn, give the State, as the prevailing party, the benefit of reasonable inferences drawn from the evidence. See *In re Adoption of B.B.M.*, 290 Kan. 236, 244, 224 P.3d 1168 (2010); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014). The question before us is whether we are persuaded that a rational fact-finder could have found it highly probable that the circumstances warranted the findings of unfitness and unlikelihood of change in the foreseeable future. *In re B.D.-Y.*, 286 Kan. at 705.

A district court must also find that termination of parental rights is in the best interests of the children. K.S.A. 38-2269(g)(1). As we discuss later, appellate courts review the best interests determination under a less demanding abuse of discretion standard.

The State's proffer took the place of evidence developed through the questioning of witnesses and the admission of exhibits. In that sense, the proffer became the evidentiary record for the termination hearing. But the agreed substitution of a proffer did not release the State from the governing burden of proof in the termination hearing. Mother did not stipulate to the legal sufficiency of the proffer, although she apparently agreed not to offer contrary evidence or to otherwise dispute the factual representations. In effect, Mother and Father gave up their rights to require the State to present evidence in the form of witnesses and documentary evidence, to cross-examine those witnesses, and to offer their own evidence. They were free to do so. See *State v. James*, 309 Kan. 1280, Syl. ¶ 5, 443 P.3d 1063 (2019) (recognizing criminal defendants may waive their constitutional rights); *Wertz v. Southern Cloud Unified School District*, 218 Kan. 25, 30, 542 P.2d 339 (1975) (recognizing party to civil dispute may waive constitutional due process rights). And Mother has not disputed that decision on appeal.

The State contends the district court properly could rely on K.S.A. 38-2248(f) to proceed with the proffer at the termination hearing. By its terms, the statute does not

apply here. Under K.S.A. 38-2248(f), a district court may accept and rely on the State's proffer in a termination hearing when a parent afforded legally sufficient notice of the hearing does not appear and has not instructed their lawyer to object. Upon objection, the district court must hear evidence. See *In re K.H.*, 56 Kan. App. 2d 1135, 1140-41, 444 P.3d 354 (2019) (explaining statutory procedure under K.S.A. 38-2244[f] when parent does not appear at termination hearing). So, on the one hand, K.S.A. 38-2248(f) precludes a district court from entering a termination order by default and in the absence of any representation from the State as to its anticipated evidence and, on the other, prevents an obdurate parent from stymying termination by refusing to appear. Here, Mother and Father did appear. During their appearance, they waived their right to a full evidentiary hearing and agreed the State could proffer its evidence. Then, with the district court's permission, they chose to leave before the proffer.

The record is less than clear on how the parties and the district court intended to treat the statements Mother and Father made at the start of the August termination hearing. As we have said, the statements were unsworn, and neither Mother nor Father was cross-examined. So the statements could not be considered the equivalent of trial testimony. They, nonetheless, probably amount to admissions that could be weighed against Mother and Father, although it does not appear the district court used them that way. And we do not.

We, of course, are in no position to gauge the full import of Mother's statement because we cannot assess her demeanor and tone in speaking to the district court. From the transcript, her statement comes across as a poignant plea for leniency or even, perhaps, mercy. Mother acknowledged her volatile relationship with Father and suggested she had stepped away from him. She outlined the financial obstacles she faced in securing housing, professed her love for and devotion to her children, and described how they warmly interacted with her during their limited visits.

7

But as we have recognized:

> "[P]arental unfitness . . . is not fault based but, rather, turns on a parent's ability to sufficiently care for his or her child. Neither inattention nor willful misconduct is a necessary condition for a judicial finding. So a parent who tries hard yet cannot adequately care for a child is unfit within the meaning of K.S.A. 2018 Supp. 38-2269(a). See *In re A.L.E.A.*, No. 116,276, 2017 WL 2617142, at *6 (Kan. App.) (unpublished opinion), *rev. denied* 307 Kan. 986 (2017). We have recognized that parents who love their children may, nonetheless, be unfit. See *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008); *In re A.L.E.A.*, 2017 WL 2617142, at *6." *In re M.P.*, No. 119,444, 2019 WL 2398034, at *4 (Kan. App. 2019) (unpublished opinion).

Even if Mother's statement were given evidentiary weight, the content did not call into question, let alone refute, the factual bases for unfitness.

Although the State's proffer was neither detailed nor robust, it established that Mother was insufficiently employed and lacked suitable housing. Those conditions had persisted for at least the better part of a year at the time of the August 2023 termination hearing. And Mother had been deceptive about her loss of employment. We have described appropriate housing and at least minimally adequate financial resources to be among "the most critical areas" necessary for successful family reunification. *In re S.I.*, No. 118,598, 2018 WL 2451937, at *3 (Kan. App. 2018) (unpublished opinion); see *In re Z.S.*, No. 125,707, 2023 WL 3031885, at *5 (Kan. App. 2023) (unpublished opinion); *In re K.O.*, No. 116,704, 2017 WL 2403304, at *6 (Kan. App. 2017) (unpublished opinion). Mother also failed to meet secondary, though substantial, objectives of the reunification plan tied to interrelated issues of domestic violence and mental health. All of those shortcomings persisted for extended periods—some stretching back to the initiation of the cases. The proffer likewise established that neither Mother nor Father made any material changes for the better in the seven months leading up to the final termination hearing.

Especially as an unrebutted recitation of the State's evidence, the proffer provided a sufficient foundation for the district court's determination that the identified grounds of unfitness had been clearly and convincingly shown and were unlikely to change in the foreseeable future. The grounds tended to overlap and were tied to Mother's (and Father's) inability or unwillingness to change their circumstances to accommodate the children's needs, particularly in the ways outlined in the reunification plans. As we have said, those deficiencies persisted up to the August termination hearing. And we measure foreseeability in "child time"—a recognition that young children experience the passage of time differently from adults in that a year, for example, represents a much larger portion of their lives. K.S.A. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion). Child time is a significant factor here. M.C. turned five years old in August 2023 and had been in the out-of-home placement for about half her life. The circumstance was even more pronounced for J.M.; he had been in the placement for all but the first 10 months of his life. In sum, the proffer showed substantial bases of continuing parental unfitness with no realistic prospect for improvement on even an extended horizon.

The courts use a different standard to gauge the best interests of a child. As directed by K.S.A. 38-2269(g)(1), the district court should give "primary consideration to the physical, mental[,] and emotional health of the child" in making a best interests determination. A district court decides best interests based on a preponderance of the evidence. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. The decision essentially rests in the district court's sound judicial discretion. 50 Kan. App. 2d at 1116. An appellate court reviews those sorts of conclusions for abuse of discretion. A district court exceeds that broad latitude if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural*

*Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *In re M.S.*, 56 Kan. App. 2d 1247, 1264, 447 P.3d 994 (2019).

Here, the proffer on the best interests of the children was especially terse. But the State's presentation showed that M.C. and J.M. were doing well in their placement. And their caregiver realistically might be an adoption option for them. Coupled with the continuing inability of Mother to achieve even limited success in reuniting with the children, we readily conclude the district court did not abuse its discretion in finding termination to be in their best interests.

Mother has failed to persuade us that the district court lacked a sufficient legal foundation—built on the State's uncontested proffer—to terminate her right to parent M.C. and J.M.

Affirmed.